**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JESSICA SMITH and JOSEPH SMITH, Individually and on behalf of J.S., a minor, <br><br> Plaintiffs, <br><br> v. <br><br> WANABANA LLC, WANABANA USA LLC, WANABANA EXCHANGE, LLC, DOLLAR TREE, INC., DOLLAR TREE STORES, INC., AUSTROFOOD S.A.S., AUSTROFOOD CIA. LTDA., GRUPO NAVIS LLC a/k/a NAVIS LLC, CARIBBEAN PRODUCE EXCHANGE, LLC, and S&S NEGOCIOS ASOCIADOS MAYORISTAS NEGASMART S.A., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Civil Case No.: 1:24-cv-002196 <br><br> Hon. Sharon Johnson Coleman <br> Magistrate: Hon. Beth W. Jantz |

**THIRD AMENDED COMPLAINT**

Plaintiffs, JESSICA SMITH and JOSEPH SMITH, individually and on behalf of J.S., a minor, by their attorneys, WALSH, KNIPPEN & CETINA, CHARTERED, for their Third Amended Complaint against Defendants, WANABANA LLC, WANABANA USA LLC, WANABANA EXCHANGE, LLC, DOLLAR TREE, INC., DOLLAR TREE STORES, INC., AUSTROFOOD S.A.S., AUSTROFOOD CIA. LTDA., GRUPO NAVIS LLC a/k/a NAVIS LLC, CARIBBEAN PRODUCE EXCHANGE, LLC, and S&S NEGOCIOS ASOCIADOS MAYORISTAS NEGASMART S.A., state as follows, together and in the alternative:

**PARTIES**

1.     Plaintiffs, JESSICA SMITH and JOSEPH SMITH, are residents of Cook County, Illinois.  J.S. is their minor daughter, residing with her parents in Cook County, Illinois.

2.      Defendant, WANABANA LLC, is a limited liability corporation organized under the laws of Florida.  Its principal office is at 9405 N. Miami Avenue, Miami Shores, Florida.

3.      Defendant, WANABANA USA LLC, is a limited liability corporation organized under the laws of Delaware.  Its principal office located at 1413 Ponce de Leon Avenue, Suite 301, San Juan, Puerto Rico.

4.      Defendant, WANABANA EXCHANGE, LLC, is a limited liability company organized under the laws of Puerto Rico.  Its principal address is recorded on its certificate of information as Carr 869 Km. 2.8 Bo Las Palmas, Catano, Puerto Rico 00962.

5.      Defendants, DOLLAR TREE, INC. and DOLLAR TREE STORES, INC., , are affiliated corporations organized and existing under the laws of Virginia with their principal offices located at 500 Volvo Pkwy, Chesapeake, Virginia.

6.      Defendant, AUSTROFOOD S.A.S., is a company organized under the laws of Ecuador.  Its principal offices are located at Av. General Enriquez, Tanicuchi Lote 8, Quito, Pichincha, 171104, Ecuador.

7.      Defendant, AUSTROFOOD CIA. LTDA., is a company organized under the laws of Ecuador.  Its principal offices are located at Av. General Enriquez, Tanicuchi Lote 8, Quito, Pichincha, 171104, Ecuador.  Upon information and belief, AUSTROFOOD CIA. LTDA. changed its name to AUSTROFOOD S.A.S.

8.      Defendant, GRUPO NAVIS LLC a/k/a NAVIS LLC, is a limited liability company organized under the laws of Puerto Rico.  Upon information and belief its principal address is located at 1413 PR-25 Suite #301, San Juan, Puerto Rico 00907.

9.      Defendant, CARIBBEAN PRODUCE EXCHANGE, LLC, is a limited liability corporation organized under the laws of Puerto Rico.  Its principal address is recorded on its

2

certificate of information as Calle 4, Edificio Mercado Central, Zona Portuaria, Puerto Nuevo, San Juan, PR, 00920.

10. Defendant, S&S NEGOCIOS ASOCIADOS MAYORISTAS NEGASMART S.A., is a company organized under the laws of Ecuador. Its principal offices are located at Gregorio Bobadilla No. N37-108 y Jose Villalengua, Sector Granda Centeno Quito, Pichincha, Ecuador.

## JURISDICTION

1. This case was removed from the Circuit Court of Cook County, Illinois to this Court pursuant to diversity jurisdiction under 28 U.S.C. § 1332(a)(1). There is complete diversity of citizenship, the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and no Defendant is a citizen of the State of Illinois.

## ALLEGATIONS COMMON TO ALL MANUFACTURERS
### (Counts I-V and X-XXIV)

## A. THE GRUPO NAVIS-CARIBBEAN PRODUCE EXCHANGE CORPORATE SCHEME

1. At all times relevant and material hereto, Defendant, GRUPO NAVIS LLC a/k/a NAVIS LLC ("GRUPO NAVIS"), was engaged in the business of owning and operating food distribution companies and was in the business of distributing fruit, vegetables and other food products throughout the United States.

2. At all times relevant and material hereto, Defendant, CARIBBEAN PRODUCE EXCHANGE, LLC, was engaged in the business of owning and operating food distribution companies and was in the business of distributing fruit, vegetables and other food products throughout the United States.

3. On and prior to November 7, 2023, Defendants, GRUPO NAVIS created, participated in, engaged in the business of and controlled a complex corporate structure, including

an international network of corporations that it controlled, to design, manufacture, import, advertise, market, distribute, and/or sell of food and food pouches, including but not limited to, Wanabana Apple Cinnamon Fruit Purée.

4.      At all times relevant and material hereto, Defendant, GRUPO NAVIS wholly owned Defendant, CARIBBEAN PRODUCE EXCHANGE, LLC.

5.      At all times relevant and material hereto, Defendant, GRUPO NAVIS was and is Defendant, CARIBBEAN PRODUCE EXCHANGE, LLC's parent company.

6.      On and prior to November 7, 2023, Defendant, GRUPO NAVIS used Defendant, CARIBBEAN PRODUCE EXCHANGE, LLC, to further the business of the design, manufacture, import, advertisement, marketing, distribute, and/or sale of food and food pouches, including but not limited to, Wanabana Apple Cinnamon Fruit Purée.

7.      Defendant, CARIBBEAN PRODUCE EXCHANGE, LLC, in furtherance of its work with and on behalf of Defendant, GRUPO NAVIS, related to Wanabana products, including but not limited to, Wanabana Apple Cinnamon Fruit Purée, registered with the FDA Foreign Supplier Verification Program ("FSVP") as a supplier and importer of Wanabana products. Pursuant to FSVP regulations it was required to conduct a written hazard analysis for the Wanabana products, identify and assess known or reasonably foreseeable hazards, require controls to eliminate the hazards and document its analyses, assessments and controls.

8.      At all times relevant and material hereto, Defendants, GRUPO NAVIS and CARIBBEAN PRODUCE EXCHANGE, LLC, advertised Wanabana products, including but not limited to, Wanabana Apple Cinnamon Fruit Purée, nationwide in the United States, including via their websites and social media targeted at the United States.

9.      At all times relevant and material hereto, Defendants, GRUPO NAVIS and

CARIBBEAN PRODUCE EXCHANGE, LLC, had shareholders, members, offices, officers and employees in common including, but not limited to the following:

- Angel Santiago, also known as Angel R. Santiago, also known as Angel Santiago Colon, was simultaneously an owner and member of GRUPO NAVIS LLC; was GRUPO NAVIS LLC's, President and Chief Executive Officer and also was CARIBBEAN PRODUCE EXCHANGE, LLC's President and Chief Executive Officer.
- Gualberto Rodriguez was simultaneously an owner and member of GRUPO NAVIS LLC; was GRUPO NAVIS LLC's Chairman and was CARIBBEAN PRODUCE EXCHANGE, LLC's Chairman, President, Vice President, Treasurer and Registered Agent.
- Marta Candelas was simultaneously GRUPO NAVIS LLC's Registered Agent and CARIBBEAN PRODUCE EXCHANGE, LLC's Secretary.
- GRUPO NAVIS LLC and CARIBBEAN PRODUCE EXCHANGE, LLC used the same offices at 1413 Ave. Ponce De Leon, San Juan, Puerto Rico.
- GRUPO NAVIS LLC and CARIBBEAN PRODUCE EXCHANGE, LLC use the same mailing address P.O. Box 367320, San Juan, Puerto Rico.
- GRUPO NAVIS LLC and CARIBBEAN PRODUCE EXCHANGE, LLC use the same phone number 787-793-0750.

10.     Gualberto Rodriguez made the following statements to the press about GRUPO NAVIS LLC and CARIBBEAN PRODUCE EXCHANGE, LLC on or about May 18, 2020:

- "[W]e also completed a family transaction in which I became a full owner of the company, and my partner, a top manager and current president of the company and CEO is Angel Santiago."
- "We created a holding company, Grupo Navis, to nurture these joint ventures, so the holding company owns Caribbean Produce Exchange, and we also use it to enter into these partnerships and new businesses."
- "[W]e entered into joint ventures with companies in the food space to sell, distribute and market in the U.S. We have a joint venture with a family company out of Ecuador, Wanabana, to commercialize a line of 100 percent tropical fruit products in a pouch in the U.S. and Canada."
- "Today, and for the past two-and-a-half years, what I do now is I'm chairman of this group of companies, Wanabana, Caribbean Produce…"

See https://perishablepundit.com/miraculously-spared-from-puerto-ricos-devastating-hurricanes-and-earthquake-caribbean-produce-exchange-overcame-years-of-tribulation-to-prepare-for-moments-like-todaynow-administers/

11.     Defendant, GRUPO NAVIS's, website biography of Angel Santiago stated,

"Mr. Angel R. Santiago is the co-founder, president and CEO of the

> holding company Grupo Navis, responsible for the operations in Puerto Rico, Ecuador and the United States of Caribbean Produce Exchange (CPE), Caribbean Logistics Services, Austrofood, WanaBana USA, and Fresh House."

12.    On and prior to November 7, 2023, Defendants, GRUPO NAVIS and Defendant, CARIBBEAN PRODUCE EXCHANGE, LLC worked together at the start of the distribution system for food and food pouches, including but not limited to, Wanabana Apple Cinnamon Fruit Purée, and purposely conducted their activities to make the products available in as many forums as possible in the USA.

13.    On and prior to November 7, 2023, Defendant, GRUPO NAVIS and Defendant, CARIBBEAN PRODUCE EXCHANGE, LLC, agreed to share equipment, systems, management, clients, customers, expenses and revenues such that they explicitly or implicitly were engaged in a joint venture regarding the design, manufacture, import, advertisement, marketing, distribute, and/or sale of food and food pouches, including but not limited to, Wanabana Apple Cinnamon Fruit Purée.

14.    On and prior to November 7, 2023, Defendant, GRUPO NAVIS dominated and exerted extraordinary control over Defendant, CARIBBEAN PRODUCE EXCHANGE, LLC. GRUPO NAVIS's board, executive committees and executives utilized a management system that penetrated the layers of ownership and actively controlled the decisions of CARIBBEAN PRODUCE EXCHANGE, LLC regarding their business related to Wanabana Apple Cinnamon Fruit Purée.

15.    At all times relevant and material hereto, Defendants, GRUPO NAVIS and CARIBBEAN PRODUCE EXCHANGE, LLC, shared a common management and operations system that they refer to as their "operational backbone", which included infrastructure, equipment, software, processes, data, applications and technology to operate CARIBBEAN

PRODUCE EXCHANGE, LLC's business.

16.     At all times relevant and material hereto, Defendant, GRUPO NAVIS, exerted extraordinary control over CARIBBEAN PRODUCE EXCHANGE, LLC by requiring it to follow GRUPO NAVIS's "operational backbone" business plan.

17.     At all times relevant and material hereto, Defendant, GRUPO NAVIS, exerted extraordinary control over CARIBBEAN PRODUCE EXCHANGE, LLC by requiring it to follow GRUPO NAVIS's policies for employee training and standard operating procedures, including with regard to food product process inspection, safety and quality.

18.     At all times relevant and material hereto, Defendant, GRUPO NAVIS, exerted extraordinary control over CARIBBEAN PRODUCE EXCHANGE, LLC by mandating and carrying out an overall business strategy, budgetary strategy, course of action and authorization of the manner in which CARIBBEAN PRODUCE EXCHANGE, LLC owned and operated food distribution companies and distributed fruit, vegetables, food and food pouches, including but not limited to, Wanabana Apple Cinnamon Fruit Purée.

19.     On and prior to November 7, 2023, Defendant, CARIBBEAN PRODUCE EXCHANGE, LLC, acted as an actual agent of GRUPO NAVIS regarding their business related to owning and operating food distribution companies and distributing fruit, vegetables, food and food pouches, including but not limited to, Wanabana Apple Cinnamon Fruit Purée.

20.     On and prior to November 7, 2023, Defendant, CARIBBEAN PRODUCE EXCHANGE, LLC, acted with apparent authority, held itself out as and appeared to a reasonable person as an agent of GRUPO NAVIS regarding their business related to owning and operating food distribution companies and distributing fruit, vegetables, food and food pouches, including but not limited to, Wanabana Apple Cinnamon Fruit Purée.

21.     At all times relevant and material hereto, Defendants, GRUPO NAVIS and CARIBBEAN PRODUCE EXCHANGE, LLC, acted in concert; pursued a common design and substantially assisted one another; and shared clients, expenses and revenues regarding their business related to design, manufacture, import, advertisement, marketing, distribute, and/or sale of food and food pouches, including but not limited to, Wanabana Apple Cinnamon Fruit Purée.

22.     At all times relevant and material hereto, Defendants, GRUPO NAVIS and CARIBBEAN PRODUCE EXCHANGE, LLC, acted in a joint venture regarding their business related to design, manufacture, import, advertisement, marketing, distribute, and/or sale of food and food pouches, including but not limited to, Wanabana Apple Cinnamon Fruit Purée.

23.     At all times relevant and material hereto, Defendants, GRUPO NAVIS and CARIBBEAN PRODUCE EXCHANGE, LLC, had such a unity of shareholders, executives, officers, employees, locations, mailing addresses, phone numbers, continuity of business and continuously operated in the same business that they had shed their separate corporate identities and had become alter egos of one another and/or had *de facto* merged.

**B. THE WANABANA CORPORATE SCHEME**

24.     On and prior to November 7, 2023, Defendants, AUSTROFOOD S.A.S. and AUSTROFOOD CIA. LTDA. ("AUSTROFOOD") were in the business of designing, manufacturing, importing, advertising, marketing, distributing, and/or selling food products.

25.     Prior to 2018, agents of Defendants, GRUPO NAVIS and CARIBBEAN PRODUCE EXCHANGE, LLC, met Santiago Cordovez, an owner and the President of Defendant, AUSTROFOOD, and Francisco Cordovez, an owner and the Secretary of Defendant, AUSTROFOOD, at a trade show.  Defendants, GRUPO NAVIS and CARIBBEAN PRODUCE EXCHANGE, LLC, recruited AUSTROFOOD to engage in the creation of a series of sham

8

companies to participate with Defendants, GRUPO NAVIS and CARIBBEAN PRODUCE EXCHANGE, LLC, in the business of designing, manufacturing, importing, advertising, marketing, distributing, and/or selling food and food pouches, including but not limited to, Wanabana Apple Cinnamon Fruit Purée.

26.      In pursuit of this scheme, on January 10, 2018, Santiago Cordovez and Francisco Cordovez of AUSTROFOOD, created Defendant, WANABANA, LLC, appointing Santiago Cordovez its President and Francisco Cordovez its General Manager.  Santiago Cordovez and Francisco Cordovez were its only members and owners.

27.      On September 17, 2018, GRUPO NAVIS, Santiago Cordovez, Francisco Cordovez and a third owner of AUSTROFOOD, Santiago Durini, formed Defendant, WANABANA EXCHANGE, LLC.  GRUPO NAVIS, Santiago Cordovez, Francisco Cordovez and Santiago Durini were its only members and owners.  Its President was Gualberto Rodriguez, its Chairman was Gualberto Rodriguez and its Secretary was Angel Santiago.

28.      On October 16, 2018, GRUPO NAVIS and WANABANA, LLC formed Defendant, WANABANA USA, LLC.  Defendants GRUPO NAVIS and WANABANA, LLC were its only members and owners.  Its President was Francisco Cordovez, its Vice President was Gualberto Rodriguez, its Secretary was Angel Santiago and its Treasurer was Santiago Cordovez.

29.      Defendants, GRUPO NAVIS, CARIBBEAN PRODUCE EXCHANGE, LLC and AUSTROFOOD used AUSTROFOOD's facilities in Ecuador to manufacture food and food pouches, including but not limited to, Wanabana Apple Cinnamon Fruit Purée.

30.      Defendant, WANABANA, LLC, was a sham corporation created solely to insulate Defendants, GRUPO NAVIS, CARIBBEAN PRODUCE EXCHANGE, LLC and AUSTROFOOD from liability related to their business of designing, manufacturing, importing,

advertising, marketing, distributing, and/or selling food and food pouches, including but not limited to, Wanabana Apple Cinnamon Fruit Purée.

31.     Defendant, WANABANA, LLC, had no offices, no employees, no computers, no income, no revenue, no significant assets and no operations. Its corporate documents identify an address at 9405 N. Miami Avenue, Miami Shores, Florida but this is only its registered agent's address. It was undercapitalized and unable to pay any dividends. It filed for bankruptcy on May 24, 2024 and is insolvent. There were no compilations, audits, or reviews of its books of accounts within two years of the date it filed for bankruptcy. Its bankruptcy was closed on September 17, 2024.

32.     Defendant, WANABANA USA, LLC, was a sham corporation created solely to insulate Defendants, GRUPO NAVIS, CARIBBEAN PRODUCE EXCHANGE, LLC and AUSTROFOOD from liability related to their business of designing, manufacturing, importing, advertising, marketing, distributing, and/or selling food and food pouches, including but not limited to, Wanabana Apple Cinnamon Fruit Purée.

33.     Defendant, WANABANA USA, LLC, did not own or lease any offices, equipment, machinery, property, or vehicles and had no significant assets. It was undercapitalized and has not paid any dividends. It filed for bankruptcy on May 24, 2024 and is insolvent. There were no compilations, audits, or reviews of its books of accounts within two years of the date it filed for bankruptcy. Defendant, GRUPO NAVIS, paid for its accounting services and possesses its books. Its bankruptcy was closed on September 17, 2024. Its documents identify two addresses. One is 1413 Ponce de Leon Avenue, Suite 301, San Juan, Puerto Rico, which is Defendant, GRUPO NAVIS's, corporate headquarters and also used by Defendant, CARIBBEAN PRODUCE EXCHANGE, LLC. The other is 10205 NW 108th

Avenue, Miami, Forida, which is merely the warehouse where space was rented to store the products it imported before they were distributed throughout the United States.

34.     Defendant, WANABANA EXCHANGE, LLC, was a sham corporation created solely to insulate Defendants, GRUPO NAVIS, CARIBBEAN PRODUCE EXCHANGE, LLC and AUSTROFOOD from liability related to their business of designing, manufacturing, importing, advertising, marketing, distributing, and/or selling food and food pouches, including but not limited to, Wanabana Apple Cinnamon Fruit Purée.

35.     Upon information and belief, Defendant, WANABANA EXCHANGE, LLC, did not own or lease any offices, equipment, machinery, property, or vehicles and had no significant assets, was undercapitalized and has not paid any dividends.  Its corporate documents identify addresses at Carr 869 Km 2.8 Bo Las Palmas, Catana, Puerto Rico, which is one of Defendant, CARIBBEAN PRODUCE EXCHANGE, LLC's, locations and PO BOX 367320, San Juan, Puerto Rico, which is Defendants, GRUPO NAVIS's and CARIBBEAN PRODUCE EXCHANGE, LLC's, mailing address.

36.     Defendants, WANABANA, LLC, WANABANA USA, LLC and WANABANA EXCHANGE, LLC were created and existed solely to further the business plan of Defendants, GRUPO NAVIS, CARIBBEAN PRODUCE EXCHANGE, LLC and/or AUSTROFOOD, in designing, manufacturing, importing, advertising, marketing, distributing, and/or selling food and food pouches, including but not limited to, Wanabana Apple Cinnamon Fruit Purée, to end sellers and end users in the United States.

37.     The purported business plan, related to the Wanabana products at issue, of these sham Defendants was that WANABANA EXCHANGE, LLC would purchase the products from AUSTROFOOD while they were *en route* from Ecuador to the USA and then sell them to

WANABANA USA, LLC before they were sold to retailers throughout the United States. WANABANA USA, LLC would organize and conduct sales to retailers throughout the United States. WANABANA EXCHANGE, LLC would not be paid for its purported sales until after WANABANA USA, LLC received the funds from the retailers that purchased the products.

38.     Because Defendant, WANABANA EXCHANGE, LLC, was undercapitalized and without any significant assets, the funds used to purchase these products were likely provided by Defendants, GRUPO NAVIS, CARIBBEAN PRODUCE EXCHANGE, LLC and/or AUSTROFOOD, and merely channeled through the sham corporate Defendant.

39.     Because Defendant, WANABANA USA, LLC, was undercapitalized, insolvent, never paid dividends and was without any significant assets, the funds received from the United States retailers was likely merely channeled through the sham corporate Defendant to Defendants, GRUPO NAVIS, CARIBBEAN PRODUCE EXCHANGE, LLC and/or AUSTROFOOD.

40.     At all times relevant and material hereto, Defendants, GRUPO NAVIS and CARIBBEAN PRODUCE EXCHANGE, LLC, oversaw the management, distribution, sale, marketing, promotion, exporting, importing, and retention of profits resulting from the sale of Wanabana products in the United States. As part of their role, they managed or substantially controlled the actions of Defendants, WANABANA, LLC, WANABANA USA, LLC and WANABANA EXCHANGE, LLC.

41.     At all times relevant and material hereto, Defendants, GRUPO NAVIS and CARIBBEAN PRODUCE EXCHANGE, LLC, controlled or had the authority to control the sourcing of ingredients, quality control, testing, manufacturing, design, packaging, labeling, marketing, promotion, advertising, and sales of the Wanabana Apple Cinnamon Fruit Purée products at issue. They had access to AUSTROFOOD's facilities, the authority and ability to

conduct inspections and assessments, controlled and had the authority to control hazard analysis processes and had the authority to require and enforce changes to it.

42.     At all times relevant and material hereto, Defendants, GRUPO NAVIS, held out and represented on its website that "Wanabana USA is the exclusive trader of Austrofood products in North America and the Caribbean. Through a highly qualified team, controlled processes and a quality and food safety management system, it aspires to be a leading fruit producer and trader in the region…".

43.     At all times relevant and material hereto, Defendants, GRUPO NAVIS, CARIBBEAN PRODUCE EXCHANGE, LLC and AUSTROFOOD, acted in concert; pursued a common design; shared clients, expenses and revenue; and substantially assisted one another in planning and implementing their corporate scheme of creating these sham corporations and pursuing their business for profit related to design, manufacture, import, advertisement, marketing, distribute, and/or sale of food and food pouches, including but not limited to, Wanabana Apple Cinnamon Fruit Purée.

44.     At all times relevant and material hereto, Defendants, GRUPO NAVIS, CARIBBEAN PRODUCE EXCHANGE, LLC and AUSTROFOOD, acted in a joint venture regarding their business related to design, manufacture, import, advertisement, marketing, distribute, and/or sale of food and food pouches, including but not limited to, Wanabana Apple Cinnamon Fruit Purée.

45.     At all times relevant and material hereto, Defendants, WANABANA, LLC, WANABANA USA, LLC and WANABANA EXCHANGE, LLC, had such a unity of shareholders, executives, officers, mailing addresses, phone numbers, continuity of business and continuously operated in the same business, they had shed their separate corporate identities and

had become alter egos of them and/or had *de facto* merged.

46.     At all times relevant and material hereto, Defendants, WANABANA USA, LLC and WANABANA EXCHANGE, LLC, were merely agents of Defendants, GRUPO NAVIS, CARIBBEAN PRODUCE EXCHANGE, LLC and AUSTROFOOD, related to design, manufacture, import, advertisement, marketing, distribute, and/or sale of food and food pouches, including but not limited to, Wanabana Apple Cinnamon Fruit Purée.

47.     At all times relevant and material hereto, Defendants, WANABANA USA, LLC and WANABANA EXCHANGE, LLC, had such a unity of shareholders, executives, officers, mailing addresses, phone numbers, continuity of business and continuously operated in the same business with Defendants, GRUPO NAVIS, CARIBBEAN PRODUCE EXCHANGE, LLC and AUSTROFOOD, that they had shed their separate corporate identities and had become alter egos of them and/or had *de facto* merged.

48.     At all times relevant and material hereto, Defendant, WANABANA, LLC, was merely an agent of Defendant, AUSTROFOOD, related to design, manufacture, import, advertisement, marketing, distribute, and/or sale of food and food pouches, including but not limited to, Wanabana Apple Cinnamon Fruit Purée.

49.     At all times relevant and material hereto, Defendants, WANABANA, LLC and AUSTROFOOD, had such a unity of shareholders, executives, officers, continuity of business and continuously operated in the same business that it had shed its separate corporate identity and had become an alter ego of and/or had *de facto* merged.

### COUNT I - NEGLIGENCE
### (Jessica Smith and Joseph Smith o/b/o J.S. v. Wanabana)

1.     Plaintiffs adopt and incorporate the allegations in the Allegations Common to All Manufacturers, above, as though fully set forth herein.

14

2.     On and prior to November 7, 2023, Defendant, WANABANA LLC, was a corporation doing business in Illinois.

3.     On and prior to November 7, 2023, Defendant, WANABANA USA LLC, was a corporation doing business in Illinois.

4.     On and prior to November 7, 2023, Defendant, WANABANA EXCHANGE LLC, was a corporation doing business in Illinois.

5.     At all times relevant and material hereto, Defendants, WANABANA LLC, WANABANA USA LLC and WANABANA EXCHANGE LLC, intentionally and purposefully sought out, marketed to, sold and delivered its food and food pouches, including but not limited to, Wanabana Apple Cinnamon Fruit Purée, to nationwide distributors and retailers in the USA, including but not limited to, Amazon.com, Dollar Tree, Family Dollar, Sam's Club, Schnucks, Weis and others, intentionally directing the products to as many forums as possible.

6.     At all times relevant and material hereto, Defendants, WANABANA LLC, WANABANA USA LLC, and WANABANA EXCHANGE LLC, intentionally and purposefully sought out, marketed to, sold and delivered its food and food pouches, including but not limited to, Wanabana Apple Cinnamon Fruit Purée, to retailers that had multiple locations in Illinois, including but not limited to, Dollar Tree with 927 Illinois stores, Family Dollar with 197 stores in Illinois, Sam's Club with 25 stores in Illinois, and Schnucks with 33 locations in Illinois, with the express aim that the products would be sold in Illinois.

7.     At all times relevant and material hereto, Defendants, WANABANA LLC, WANABANA USA LLC, and WANABANA EXCHANGE LLC, had actual knowledge that its food and food pouches, including but not limited to, Wanabana Apple Cinnamon Fruit Purée, were delivered to nationwide distributors and retailers in the USA, including but not limited to,

15

Amazon.com, Dollar Tree, Family Dollar, Sam's Club, Schnucks, Weis and others.

8.     At all times relevant and material hereto, Defendants, WANABANA LLC, WANABANA USA LLC, and WANABANA EXCHANGE LLC, had actual knowledge that its food and food pouches, including but not limited to, Wanabana Apple Cinnamon Fruit Purée, were delivered to retailers that had multiple locations in Illinois, including but not limited to, Dollar Tree with 927 Illinois stores, Family Dollar with 197 stores in Illinois, Sam's Club with 25 stores in Illinois, and Schnucks with 33 locations in Illinois.

9.     Defendants, WANABANA LLC, WANABANA USA LLC, and WANABANA EXCHANGE LLC, purposefully directed their activities at the State of Illinois and delivered their products into the stream of commerce with the expectation that they will be purchased by consumers in the State of Illinois and purposefully availed themselves of the privilege of conducting activities within the State of Illinois, thus invoking the benefits and protections of its laws.

10.     There is no federal regulation regarding lead contamination of food and food pouches that would preempt the Plaintiffs' state-law claims.

11.     Defendants, WANABANA LLC, WANABANA USA LLC, and WANABANA EXCHANGE LLC, forfeit any shield of federal preemption because they designed, manufactured, marketed, distributed, and sold unapproved, adulterated, and/or misbranded food, including Wanabana Apple Cinnamon Fruit Purée.  Plaintiffs, JESSICA SMITH's and JOSEPH SMITH's, state law claims do not conflict with the federal regulatory scheme and do not require anything different or additional than what federal law already requires.

12.     On and prior to November 7, 2023, Defendants, WANABANA LLC, WANABANA USA LLC, and WANABANA EXCHANGE LLC, represented to the public,

16

including Plaintiffs, JESSICA SMITH and JOSEPH SMITH, that they "have a team of highly qualified people, controlled processes and a food safety management system, which allows us to guarantee the safety of our products and a continuous improvement of our processes" and that they "carry a production line with the highest standards in the market, evidenced in the certifications obtained year after year."

13.     Prior to November 7, 2023, Defendant, WANABANA USA LLC, registered with the FDA Foreign Supplier Verification Program ("FSVP") as an importer of Wanabana products. Pursuant to FSVP regulations it was required to conduct a written hazard analysis for the Wanabana products, identify and assess known or reasonably foreseeable hazards, require controls to eliminate the hazards and document its analyses, assessments and controls.

14.     On and prior to November 7, 2023, Defendants, WANABANA LLC, WANABANA USA LLC, and WANABANA EXCHANGE LLC, controlled and/or had the authority to control the sourcing of ingredients, testing, manufacturing process, quality assurance protocols, design, packaging, labeling, marketing, advertising, promotion, distribution, and sales of their products.  Defendants, WANABANA LLC, WANABANA USA LLC, and WANABANA EXCHANGE LLC, therefore had control over both the contents and the labeling of their products.

15.     On and prior to November 7, 2023, Defendants, WANABANA LLC, WANABANA USA LLC, and WANABANA EXCHANGE LLC, marketed their above-described food and food pouches, including Wanabana Apple Cinnamon Fruit Purée, for consumption by children, including but not limited to via advertising on their websites and social media targeted at the United States.

16.     On and prior to November 7, 2023, Defendants, WANABANA LLC, WANABANA USA LLC, and WANABANA EXCHANGE LLC, labeled their above-described

food and food pouches, including Wanabana Apple Cinnamon Fruit Purée, with the words "I AM
FRUIT", "No preservatives", "Gluten free", "NO SUGAR ADDED", and "KOSHER".

17.     On and prior to November 7, 2023, Defendants, WANABANA LLC,
WANABANA USA LLC, and WANABANA EXCHANGE LLC, labeled their above-described
food and food pouches with a list of ingredients representing that the only ingredients were "Apple
puree, cinnamon powder, acidulant: citric acid."  A copy of the front and back of the packaging
and labeling is attached below.



18.     Since the 1990s, if not earlier, it has been well-known in the food industry that
spices, including cinnamon, present a risk of lead exposure.  Spices can accumulate lead from
natural sources such as soil and water; from unnatural sources such as gasoline or other pollutants;
or from mixing lead with cinnamon to boost color or weight and increase the value of the product.

19.     On and prior to November 7, 2023, Defendants, WANABANA LLC,
WANABANA USA LLC, and WANABANA EXCHANGE LLC, were aware of the risk of lead
in spices, including cinnamon.

18

20. Lead is not generally recognized as safe but, rather, is considered unsafe for ingestion by children at any level.

21. On and prior to November 7, 2023, the Illinois Lead Poisoning Prevention Act was enacted for the purpose of public safety and read, in relevant part,

> No person shall sell, have, offer for sale, or transfer toys, furniture, clothing, accessories, jewelry, decorative objects, edible items, candy, food, dietary supplements, or other articles used by or intended to be chewable by children that contain a lead-bearing substance.

410 ILCS 45/4.

22. On and prior to November 7, 2023, the Cook County, Illinois Lead Poisoning Prevention Ordinance was enacted for the purpose of public safety and read, in relevant part,

> "No Person shall use or apply Lead-Bearing Substances:
> ***
> (c) In or upon any items, including, but not limited to, clothing, accessories, jewelry, decorative objects, edible items, candy, food, spices, cosmetics, objects used to prepare or serve food, dietary supplements, toys, furniture, or other articles used by or intended to be chewable or consumed by Children; …"

Cook County, IL, Code § 38-254

23. On and prior to November 7, 2023, Defendants, WANABANA LLC, WANABANA USA LLC, and WANABANA EXCHANGE LLC, had a duty to refrain from selling food that contained lead.

24. Defendants, WANABANA LLC, WANABANA USA LLC, and WANABANA EXCHANGE LLC, used a manufacturing process and/or allowed a manufacturing process that resulted in their food, including Wanabana Apple Cinnamon Fruit Purée, becoming contaminated with unsafe levels of poisonous and otherwise hazardous lead.

25. Because Defendants, WANABANA LLC, WANABANA USA LLC, and WANABANA EXCHANGE LLC, caused or allowed their above-described food to contain new

19

additives of lead that are poisonous and otherwise hazardous, they were not the same as corresponding food that did not contain lead.

26. Because Defendants, WANABANA LLC, WANABANA USA LLC, and WANABANA EXCHANGE LLC, caused or allowed their above-described food to contain new additives of lead that are poisonous and otherwise hazardous, they were entirely new food products with an additive that had never gone through the U.S. Food and Drug Administration ("FDA") submission, review, and approval process.

27. Because Defendants, WANABANA LLC, WANABANA USA LLC, and WANABANA EXCHANGE LLC, caused or allowed their above-described food and food pouches, including Wanabana Apple Cinnamon Fruit Purée, to contain lead that is poisonous and otherwise hazardous, they were adulterated products.

28. Defendants, WANABANA LLC, WANABANA USA LLC, and WANABANA EXCHANGE LLC, labeled their food and food pouches, including Wanabana Apple Cinnamon Fruit Purée, but said labeling did not include the presence of unsafe levels of poisonous and otherwise hazardous lead.

29. Prior to November 7, 2023, Defendants, WANABANA LLC, WANABANA USA LLC, and WANABANA EXCHANGE LLC, sold their products, including Wanabana Apple Cinnamon Fruit Purée, to Plaintiffs, JESSICA SMITH and JOSEPH SMITH, or to others who, in turn, sold them to Plaintiffs, JESSICA SMITH and JOSEPH SMITH, in Cook County, Illinois, who fed them to their minor daughter, J.S.

30. Prior to November 7, 2023, Plaintiffs, JESSICA SMITH and JOSEPH SMITH, purchased the above-described WanaBana Apple Cinnamon Fruit Purée pouches at Dollar Tree locations at 12625 Western Avenue, Blue Island, Illinois; 8721 S. Stony

Island Ave. Chicago, Illinois; 715 E. 47th Street, Chicago, Illinois and 18230 Kedzie Avenue, Hazel Crest, Illinois, and possibly other locations.

31.     Prior to November 7, 2023, Plaintiffs, JESSICA SMITH and JOSEPH SMITH, read and relied upon Defendant, WANABANA LLC's, WANABANA USA LLC's, and WANABANA EXCHANGE LLC's labels and ingredients and used their above-described products as intended.

32.     On November 7, 2023, Plaintiff, JESSICA SMITH's and JOSEPH SMITH's minor daughter, J.S., was diagnosed with heightened and toxic lead levels in her blood after regularly consuming Defendant, WANABANA LLC's, WANABANA USA LLC's, and WANABANA EXCHANGE LLC's food for nearly one year.

33.     From December 4th to December 14th, 2023, the FDA's Department of Health and Human Services conducted an inspection of AUSTROFOOD's Ecuadorian manufacturing facilities where the Wanabana products were processed and mixed, as well as AUSTROFOOD's manufacturing procedures and documents.

34.     The FDA found that AUSTROFOOD had documentation of testing results and analyses for the Wanabana products at issue that were created prior to the year 2023.  The FDA found that this documentation showed that AUSTROFOOD had identified lead as a potential hazard in the raw materials used for the Wanabana products at issue, including cinnamon, but failed to conduct or perform preventative control for lead in the cinnamon.  The FDA also found that AUSTROFOOD failed to sample and test the cinnamon and other raw materials for heavy metals, including lead.

35. The FDA found that these failures by AUSTROFOOD violated Current Good Manufacturing Practice (21 C.F.R. Part 117) and the Federal Food, Drug, and Cosmetic Act (21 U.S.C. § 331(uu)).

36. From February 21st through March 7th, 2024, the Food and Drug Administration conducted an inspection of Defendant, WANABANA USA LLC's, activities to comply with FSVP regulations relating to its import of the Wanabana products at issue.

37. The FDA found that Defendant, WANABANA USA LLC, failed to consider the required hazard analysis to identify reasonably foreseeable hazards of lead contamination when evaluating its products and when evaluating AUSTROFOOD's procedures, and failed to perform lead testing or require that the products be tested for lead.

38. The FDA found that Defendant, WANABANA USA LLC's, safety failures violated Federal Regulations related to food safety that applied to WANABANA USA LLC.

39. At all times relevant, it was the duty of Defendants, WANABANA LLC, WANABANA USA LLC, and WANABANA EXCHANGE LLC, to exercise reasonable care in the design, manufacture, and sale of their products such that they were safe for consumers in general and Plaintiff, JESSICA SMITH's and JOSEPH SMITH's minor daughter, J.S., in particular.

40. If Defendants, WANABANA LLC, WANABANA USA LLC, and WANABANA EXCHANGE LLC, had performed or required a reasonable review of WANABANA USA LLC's, and/or AUSTROFOOD's hazard evaluation processes and preventative controls prior to the products being sold or otherwise provided to Plaintiffs, the lack of testing for the known risk of lead would have been discovered and such testing should have been performed and the lead contamination would have been discovered.

41.     If Defendants, WANABANA LLC, WANABANA USA LLC, and WANABANA EXCHANGE LLC, had performed or required reasonable testing for the presence of lead in the ingredients for the Wanabana products at issue prior to the products being sold or otherwise provided to Plaintiffs, unsafe levels of lead would have been found and the products should not have been delivered to the Plaintiffs.

42.     Prior to importing, distributing and/or selling its WanaBana Apple Cinnamon Fruit Purée pouches Defendants, WANABANA LLC, WANABANA USA LLC, and WANABANA EXCHANGE LLC, knew or should have known that the above-described food and food pouches manufacturing and testing processes lacked preventative control for lead, lacked reasonable and sufficient testing of the raw materials, including cinnamon, for the presence of lead, and otherwise violated policies, standards and vendor terms and conditions; Current Good Manufacturing Practice (21 C.F.R. Part 117) and the Federal Food, Drug, and Cosmetic Act (21 U.S.C. § 331(uu)).

43.     Prior to importing, distributing and/or selling its WanaBana Apple Cinnamon Fruit Purée pouches Defendants, WANABANA LLC, WANABANA USA LLC, and WANABANA EXCHANGE LLC, knew or should have known that the above-described food and food pouches contained unsafe levels of lead.

44.     Prior to November 7, 2023, Defendants, WANABANA LLC, WANABANA USA LLC, and WANABANA EXCHANGE LLC, did breach their duty and were guilty of one or more, or all, of the following negligent acts and/or omissions:

(a)     Designed, manufactured, and sold food and food pouches that contained lead;

(b)     Designed, manufactured, and sold food and food pouches that were adulterated;

(c)     Designed, manufactured, and sold food and food pouches that were misbranded;

(d)     Designed, manufactured, and sold food and food pouches while misrepresenting their ingredients and effects;

23

(e)     Designed, manufactured, and sold food and food pouches while concealing their ingredients and effects;

(f)     Designed, manufactured, and sold food and food pouches with an additive that had not undergone the FDA submission, review, and approval process;

(g)     Failed to conduct or require reasonable safety procedures related to the presence of lead;

(h)     Failed to warn about the presence of lead in their food and food pouches; and/or

(i)     Were otherwise careless and negligent in their design, manufacture, and sale of the above-described food and food pouches.

45.     As a proximate result of one or more, or all, of the foregoing negligent acts and/or omissions of Defendants, WANABANA LLC, WANABANA USA LLC, and WANABANA EXCHANGE LLC, and each of them, Plaintiff, JESSICA SMITH's and JOSEPH SMITH's minor daughter, J.S., was caused to suffer severe personal, pecuniary, and debilitating injuries for which she has sought, and in the future must seek, medical care and attention and for which she has been kept, and will in the future be kept, from attending to her ordinary affairs and duties, and as a result of the foregoing, Plaintiff, JESSICA SMITH's and JOSEPH SMITH's minor daughter, J.S., has become, and will in the future continue to become, responsible for sums of money for medical and hospital care.

WHEREFORE, Plaintiffs, JESSICA SMITH and JOSEPH SMITH, on behalf of J.S., a minor, respectfully pray for judgment in their favor and against Defendants, WANABANA LLC, WANABANA USA LLC, and WANABANA EXCHANGE LLC, and each of them, in an amount in excess of $75,000.00 that will fairly and adequately compensate their minor daughter, J.S., together with costs of this suit, and for such other and further relief as is just and adequate.

## COUNT II - STRICT LIABILITY
### (Jessica Smith and Joseph Smith o/b/o J.S. v. Wanabana)

1-38.     Plaintiffs, JESSICA SMITH and JOSEPH SMITH, repeat, reallege, and

24

incorporate by reference Paragraphs 1 through 38 of Count I of their Complaint as though fully set forth herein.

39. The above-described food and food pouches that Defendants, WANABANA LLC, WANABANA USA LLC, and WANABANA EXCHANGE LLC, provided to Plaintiffs, JESSICA SMITH and JOSEPH SMITH, were defective and unreasonably dangerous in one or more, or all, of the following respects:

(a) They contained lead;

(b) They were adulterated;

(c) They were misbranded;

(d) The labels misrepresented the ingredients and additives;

(e) The labels did not include all of the ingredients and additives;

(f) They contained poisonous substances;

(g) They failed to include warnings about lead or other poisonous substances; and/or

(h) They were otherwise defective and unreasonably dangerous.

40 The above-described unreasonably dangerous and defective conditions existed at the time the products at issue were manufactured.

41. As a proximate result of one or more, or all, of the foregoing defective and unreasonably dangerous conditions in the food and food pouches designed, manufactured, and sold by Defendants, WANABANA LLC, WANABANA USA LLC, and WANABANA EXCHANGE LLC, and each of them, Plaintiff, JESSICA SMITH's and JOSEPH SMITH's minor daughter, J.S., was caused to suffer severe personal, pecuniary, and debilitating injuries for which she has sought, and in the future must seek, medical care and attention and for which she has been kept, and will in the future be kept, from attending to her ordinary affairs and duties, and as a result of the

foregoing, Plaintiff, JESSICA SMITH's and JOSEPH SMITH's minor daughter, J.S., has become, and will in the future continue to become, responsible for sums of money for medical and hospital care.

WHEREFORE, Plaintiffs, JESSICA SMITH and JOSEPH SMITH, on behalf of J.S., a minor, respectfully pray for judgment in their favor and against Defendants, WANABANA LLC, WANABANA USA LLC, and WANABANA EXCHANGE LLC, and each of them, in an amount in excess of $75,000.00 that will fairly and adequately compensate their minor daughter, J.S., together with costs of this suit, and for such other and further relief as is just and adequate.

### COUNT III - BREACH OF IMPLIED WARRANTY
### (Jessica Smith and Joseph Smith o/b/o J.S. v. Wanabana)

1-38. Plaintiffs, JESSICA SMITH and JOSEPH SMITH, repeat, reallege, and incorporate by reference Paragraphs 1 through 38 of Count I of their Complaint as though fully set forth herein.

39. At all relevant times, Paragraph 2-314(2)(c) of the Illinois Uniform Commercial Code, 810 ILCS 2-314(2)(c), was in full force and effect.

40. At the time of the delivery of the above-described food and food pouches, Defendants, WANABANA LLC, WANABANA USA LLC, and WANABANA EXCHANGE LLC, then and there impliedly warranted that these products were of merchantable quality and fit for the ordinary purpose for which they were used, to be eaten and ingested, including by children.

41. At all relevant times, Plaintiff, JESSICA SMITH's and JOSEPH SMITH's minor daughter, J.S., was a direct or third-party beneficiary of the above-described implied warranty of merchantability.

42. Plaintiffs relied upon the products being of merchantable quality and fit for the ordinary purpose for which they were used, to be eaten, including by children, when purchasing

26

and providing the products to the minor Plaintiff, J.S.

43.     Defendants, DOLLAR TREE, INC. and DOLLAR TREE STORES, INC., breached the aforesaid implied warranty of merchantability in that the above-described food and food pouches contained unsafe levels of lead, were not safe for consumption, their consumption caused injury, and otherwise failed to perform in the manner reasonably to be expected in light of their nature and intended function and caused injury during normal use.

44.     Defendants, WANABANA LLC, WANABANA USA LLC, and WANABANA EXCHANGE LLC, breached the aforesaid implied warranty of merchantability in that the above-described food and food pouches failed to perform in the manner reasonably to be expected in light of their nature and intended function and caused injury during normal use.

45.     By reason of the aforesaid breaches of implied warranty by Defendants, WANABANA LLC, WANABANA USA LLC, and WANABANA EXCHANGE LLC, Plaintiff, JESSICA SMITH's and JOSEPH SMITH's minor daughter, J.S., was caused to suffer severe personal, pecuniary, and debilitating injuries for which she has sought, and in the future must seek, medical care and attention and for which she has been kept, and will in the future be kept, from attending to her ordinary affairs and duties, and as a result of the foregoing, Plaintiff, JESSICA SMITH's and JOSEPH SMITH's minor daughter, J.S., has become, and will in the future continue to become, responsible for sums of money for medical and hospital care.

WHEREFORE, Plaintiffs, JESSICA SMITH and JOSEPH SMITH, on behalf of J.S., a minor, respectfully pray for judgment in their favor and against Defendants, WANABANA LLC, WANABANA USA LLC, and WANABANA EXCHANGE LLC, and each of them, in an amount in excess of $75,000.00 that will fairly and adequately compensate their minor daughter, J.S., together with costs of this suit, and for such other and further relief as is just and adequate.

## COUNT IV - BREACH OF EXPRESS WARRANTY
### (Jessica Smith and Joseph Smith o/b/o J.S. v. Wanabana)

1-38.     Plaintiffs, JESSICA SMITH and JOSEPH SMITH, repeat, reallege, and incorporate by reference Paragraphs 1 through 38 of Count I of their Complaint as though fully set forth herein.

39.     At all relevant times, Paragraph 2-313(1) of the Illinois Uniform Commercial Code, 810 ILCS 2-313(1), was in full force and effect.

40.     At the time of the delivery of the above-described food pouches, Defendants, WANABANA LLC, WANABANA USA LLC, and WANABANA EXCHANGE LLC, then and there expressly warranted that these products contained only apple puree, cinnamon powder, and citric acid.

41.     At the time of the delivery of the above-described food pouches, Defendants, WANABANA LLC, WANABANA USA LLC, and WANABANA EXCHANGE LLC, then and there expressly warranted that these products were of merchantable quality and fit for the ordinary purpose for which they were used.

42.     At all relevant times, Plaintiff, JESSICA SMITH's and JOSEPH SMITH's minor daughter, J.S., was a direct or third-party beneficiary of the above-described express warranty of merchantability.

43.     Plaintiffs relied upon the products being of merchantable quality and containing only apple puree, cinnamon powder, and citric acid, and otherwise being fit for the ordinary purpose for which they were used, to be eaten, including by children, when purchasing and providing the products to the minor Plaintiff, J.S.

44.     Defendants, WANABANA LLC, WANABANA USA LLC, and WANABANA EXCHANGE LLC, breached the aforesaid express warranty of merchantability in that the above-

described food and food pouches contained toxic and hazardous lead and otherwise failed to perform in the manner reasonably to be expected in light of their nature and intended function and caused injury during normal use.

45.     By reason of the aforesaid breaches of express warranty by Defendants, WANABANA LLC, WANABANA USA LLC, and WANABANA EXCHANGE LLC, Plaintiff, JESSICA SMITH's and JOSEPH SMITH's minor daughter, J.S., was caused to suffer severe personal, pecuniary, and debilitating injuries for which she has sought, and in the future must seek, medical care and attention and for which she has been kept, and will in the future be kept, from attending to her ordinary affairs and duties, and as a result of the foregoing, Plaintiff, JESSICA SMITH's and JOSEPH SMITH's minor daughter, J.S., has become, and will in the future continue to become, responsible for sums of money for medical and hospital care.

WHEREFORE, Plaintiffs, JESSICA SMITH and JOSEPH SMITH, on behalf of J.S., a minor, respectfully pray for judgment in their favor and against Defendants, WANABANA LLC, WANABANA USA LLC, and WANABANA EXCHANGE LLC, and each of them, in an amount in excess of $75,000.00 that will fairly and adequately compensate their minor daughter, J.S., together with costs of this suit, and for such other and further relief as is just and adequate.

### COUNT V - FAMILY EXPENSE ACT
### (Jessica Smith and Joseph Smith v. Wanabana)

1.     Plaintiffs, JESSICA SMITH and JOSEPH SMITH, repeat, reallege, and incorporate by reference the allegations of Count I through Count IV of their Complaint, together and in the alternative, as though fully set forth herein.

2.     At the time she tested positive for heightened lead levels, J.S. was a minor and Plaintiffs, JESSICA SMITH and JOSEPH SMITH, were the parents of J.S.

3.     As a proximate result of one or more, or all, of the foregoing acts and/or omissions

of Defendants, WANABANA LLC, WANABANA USA LLC, and WANABANA EXCHANGE LLC, Plaintiff, JESSICA SMITH's and JOSEPH SMITH's minor daughter, J.S., sustained injuries and damages of a personal and pecuniary nature, necessitating medical treatment, and resulting in medical expenses for her medical treatment.

4.     Plaintiffs, JESSICA SMITH and JOSEPH SMITH, as parents of J.S., incurred medical expenses for the treatment provided to J.S. when she was a minor.

5.     This action is brought pursuant to the Family Expense Act, 750 ILCS 65/15.

WHEREFORE, Plaintiffs, JESSICA SMITH and JOSEPH SMITH, respectfully pray for judgment against Defendants, WANABANA LLC, WANABANA USA LLC, and WANABANA EXCHANGE LLC, and each of them, in such sum as will reasonably and fairly compensate Plaintiffs, JESSICA SMITH and JOSEPH SMITH, for the medical expenses they incurred for treatment of their daughter, J.S., a minor, resulting from the acts and/or omissions of Defendants, WANABANA LLC, WANABANA USA LLC, and WANABANA EXCHANGE LLC, together with costs of this suit, and for such other and further relief as is just and adequate.

## COUNT VI - NEGLIGENCE
### (Jessica Smith and Joseph Smith o/b/o J.S. v. Dollar Tree)

1.     On and prior to November 7, 2023, Defendant, DOLLAR TREE, INC., was a corporation doing business in Cook County, Illinois at multiple locations, including 12625 Western Avenue, Blue Island, Illinois; 8721 S. Stony Island Ave. Chicago, Illinois; 715 E. 47th Street, Chicago, Illinois and 18230 Kedzie Avenue, Hazel Crest, Illinois.

2.     On and prior to November 7, 2023, Defendant, DOLLAR TREE STORES, INC., was a corporation doing business in Cook County, Illinois at multiple locations, including 12625 Western Avenue, Blue Island, Illinois; 8721 S. Stony Island Ave. Chicago, Illinois; 715 E. 47th Street, Chicago, Illinois and 18230 Kedzie Avenue, Hazel Crest, Illinois.

3.     Defendants, DOLLAR TREE, INC. and DOLLAR TREE STORES, INC., have purposefully directed their activities at the State of Illinois, own property and operate business in Illinois, employ Illinois citizens, and delivered their products into the stream of commerce with the expectation that they will be purchased by consumers in the State of Illinois and purposefully availed themselves of the privilege of conducting activities within the State of Illinois, thus invoking the benefits and protections of its laws.

4.     On and prior to November 7, 2023, Defendants, DOLLAR TREE, INC. and DOLLAR TREE STORES, INC., were a Fortune 200 company operating, with their affiliates, over 16,000 stores across the contiguous 48 states of the United States and Canadian provinces.

5.     On and prior to November 7, 2023, Defendants, DOLLAR TREE, INC. and DOLLAR TREE STORES, INC., were in the business of importing, advertising, marketing, distributing and selling household paper and chemicals, food, candy, health and personal care products, frozen and refrigerated food, toys, durable housewares, gifts, stationery, party goods, greeting cards, crafts supplies and other items.

6.     On and prior to November 7, 2023, Defendants, DOLLAR TREE, INC. and DOLLAR TREE STORES, INC., directly imported approximately 40%, or more, of the merchandise sold in their retail stores from foreign countries and a significant portion their merchandise purchased from domestic vendors was imported from foreign countries.

7.     On and prior to November 7, 2023, Defendants, DOLLAR TREE, INC. and DOLLAR TREE STORES, INC., were experts in importing, advertising, marketing, distributing and selling goods, including food products, and were experts in operating retail stores and the retail store industry, generally.

8.     On and prior to November 7, 2023, the term "vendors" as used by Defendants,

DOLLAR TREE, INC. and DOLLAR TREE STORES, INC., 's, included manufacturers, service providers, contractors, subcontractors, suppliers, partners, and factories that do business with Dollar Tree, regardless of geographic location.

9.      On and prior to November 7, 2023, the entities that designed, manufactured, labeled and/or imported the Wanabana products at issue were vendors of Defendants, DOLLAR TREE, INC. and DOLLAR TREE STORES, INC.

10.     On and prior to November 7, 2023, the entities that sold or delivered the Wanabana products at issue to Defendants, DOLLAR TREE, INC. and DOLLAR TREE STORES, INC., were vendors of Defendants, DOLLAR TREE, INC. and DOLLAR TREE STORES, INC.

11.     On and prior to November 7, 2023, Defendants, DOLLAR TREE, INC. and DOLLAR TREE STORES, INC., contracted with their vendors and/or otherwise required their vendors to follow Defendants, DOLLAR TREE, INC.'s and DOLLAR TREE STORES, INC.'s, internal policies and comply with their internal standards, including regarding the design, manufacture, labeling and importing of the Wanabana products at issue.

12.     On and prior to November 7, 2023, Defendants, DOLLAR TREE, INC. and DOLLAR TREE STORES, INC., had undertaken, enacted and enforced policies and standards which required Defendants, DOLLAR TREE, INC. and DOLLAR TREE STORES, INC., to provide safe, quality products; comply with laws and regulations governing the manufacture and labeling of the products sold at their stores; and adhere to quality and safety requirements of the Consumer Product Safety Commission and the Food and Drug Administration.

13.     On and prior to November 7, 2023, Defendants, DOLLAR TREE, INC. and DOLLAR TREE STORES, INC., contracted with their vendors and/or otherwise required their vendors to comply with laws and regulations governing the manufacture and labeling of the

products sold at Defendants' stores; adhere to quality and safety requirements of the Consumer Product Safety Commission and the Food and Drug Administration; and comply with applicable laws and regulations and the import requirements of the United States.

14. On and prior to November 7, 2023, Defendants, DOLLAR TREE, INC. and DOLLAR TREE STORES, INC., had undertaken, enacted and enforced policies and standards which prohibited Defendants, DOLLAR TREE, INC. and DOLLAR TREE STORES, INC., from selling products intended for children that contained lead.

15. On and prior to November 7, 2023, Defendants, DOLLAR TREE, INC. and DOLLAR TREE STORES, INC., contracted with their vendors and/or otherwise required their vendors to refrain from selling or providing products to Defendants, DOLLAR TREE, INC. and DOLLAR TREE STORES, INC., intended for children that contained lead.

16. On and prior to November 7, 2023, Defendants, DOLLAR TREE, INC. and DOLLAR TREE STORES, INC.'s, above-described policies and standards prohibiting the sale of products intended for children that contained lead required Defendants, DOLLAR TREE, INC. and DOLLAR TREE STORES, INC., to obtain full and accurate ingredient lists for all products from all of their vendors, regardless of geographic location.

17. On and prior to November 7, 2023, Defendants, DOLLAR TREE, INC. and DOLLAR TREE STORES, INC., contracted with their vendors and/or otherwise required their vendors to provide Defendants, DOLLAR TREE, INC. and DOLLAR TREE STORES, INC., full and accurate ingredient lists for all products from all of their vendors, regardless of geographic location.

18. On and prior to November 7, 2023, Defendants, DOLLAR TREE, INC. and DOLLAR TREE STORES, INC., had undertaken, enacted and enforced vendor terms and

conditions that required Defendants, DOLLAR TREE, INC. and DOLLAR TREE STORES, INC., to obtain documentation from their vendors regarding their vendors' products, including SDS (Safety Data Sheet) information, Proposition 65 product information, ingredient information and the results of repeat and regular testing of their vendors' products to ensure that their vendors' products complied with the requirements of the Federal Food, Drug & Cosmetic Act as amended, its implementing regulations and all U.S. Food and Drug Administration requirements applicable to any product, including without limitation the current Good Manufacturing Practices.

19.     On and prior to November 7, 2023, Defendants, DOLLAR TREE, INC. and DOLLAR TREE STORES, INC., contracted with their vendors and/or otherwise required their vendors to provide Defendants, DOLLAR TREE, INC. and DOLLAR TREE STORES, INC., documentation from their vendors regarding their vendors' products, including SDS (Safety Data Sheet) information, Proposition 65 product information, ingredient information and the results of repeat and regular testing of their vendors' products to ensure that their vendors' products complied with the requirements of the Federal Food, Drug & Cosmetic Act as amended, its implementing regulations and all U.S. Food and Drug Administration requirements applicable to any product, including without limitation the current Good Manufacturing Practices.

20.     Defendants, DOLLAR TREE, INC. and DOLLAR TREE STORES, INC., exerted significant control over the design, manufacture, labeling and importing of the Wanabana products at issue by requiring its vendors to comply with Defendants' policies and procedures, including but not limited to the above-described policies, standards and vendor terms and conditions.

21.     Defendants, DOLLAR TREE, INC. and DOLLAR TREE STORES, INC., controlled or had the right to control the entities that designed, manufactured, labeled, imported and/or sold the Wanabana products at issue, by requiring their vendors to comply the above-

34

described policies, standards and vendor terms and conditions.

22. Since the 1990s, if not earlier, it has been well-known in the retail food industry that spices, including cinnamon, present a risk of lead exposure. Spices can accumulate lead from natural sources such as soil and water; from unnatural sources such as gasoline or other pollutants; or from mixing lead with cinnamon to boost color or weight and increase the value of the product.

23. On and prior to November 7, 2023, Defendants, DOLLAR TREE, INC. and DOLLAR TREE STORES, INC., were aware of the risk of lead in spices, including cinnamon.

24. Prior to the discovery of the presence of lead in the Wanabana products at issue, Defendants, DOLLAR TREE, INC. and DOLLAR TREE STORES, INC., had enacted policies that required placing warnings of lead exposure near spices displayed in their stores

25. Prior to the discovery of the presence of lead in the Wanabana products at issue, Defendants, DOLLAR TREE, INC. and DOLLAR TREE STORES, INC., had received notices and complaints regarding spices, including cinnamon, containing lead.

26. On and prior to November 7, 2023, the Illinois Lead Poisoning Prevention Act was enacted for the purpose of public safety and read, in relevant part,

> No person shall sell, have, offer for sale, or transfer toys, furniture, clothing, accessories, jewelry, decorative objects, edible items, candy, food, dietary supplements, or other articles used by or intended to be chewable by children that contain a lead-bearing substance.

410 ILCS 45/4.

27. On and prior to November 7, 2023, the Cook County, Illinois Lead Poisoning Prevention Ordinance was enacted for the purpose of public safety and read, in relevant part,

> "No Person shall use or apply Lead-Bearing Substances:
> ***
> (c) In or upon any items, including, but not limited to, clothing, accessories, jewelry, decorative objects, edible items, candy, food, spices, cosmetics, objects used to prepare or serve food, dietary supplements, toys, furniture,

35

> or other articles used by or intended to be chewable or consumed by
> Children; …"

Cook County, IL, Code § 38-254

28.     On and prior to November 7, 2023, Defendants, DOLLAR TREE, INC. and DOLLAR TREE STORES, INC., had a duty to refrain from selling food that contained lead.

29.     On and prior to November 7, 2023, Defendants, DOLLAR TREE, INC. and DOLLAR TREE STORES, INC., were regularly engaged in the business of importing, advertising, marketing, distributing and selling WanaBana Apple Cinnamon Fruit Purée.

30.     On and prior to November 7, 2023, Defendants, DOLLAR TREE, INC. and DOLLAR TREE STORES, INC., earned income and otherwise reaped a profit from their business of importing, advertising, marketing, distributing and selling WanaBana Apple Cinnamon Fruit Purée.

31.     On and prior to November 7, 2023, Defendants, DOLLAR TREE, INC. and DOLLAR TREE STORES, INC., advertised and marketed the above-described WanaBana Apple Cinnamon Fruit Purée food and food pouches as safe and healthy for consumption by children.

32.     On and prior to November 7, 2023, Defendants, DOLLAR TREE, INC. and DOLLAR TREE STORES, INC., advertised, marketed and sold the above-described WanaBana Apple Cinnamon Fruit Purée food and food pouches, with labels that contained the words "I AM FRUIT", "No preservatives", "Gluten free", "NO SUGAR ADDED", and "KOSHER".

33.     On and prior to November 7, 2023, Defendants, DOLLAR TREE, INC. and DOLLAR TREE STORES, INC., advertised, marketed and sold the above-described WanaBana Apple Cinnamon Fruit Purée food and food pouches, with labels that contained a list of ingredients representing that the only ingredients were "Apple puree, cinnamon powder, acidulant: citric acid." A copy of the front and back of the packaging and labeling is attached below.

36



34.     On and prior to November 7, 2023, the above-described WanaBana Apple Cinnamon Fruit Purée food and food pouches contained unsafe levels of poisonous and otherwise hazardous lead.

35.     Lead is not generally recognized as safe but, rather, is considered poisonous and unsafe for ingestion by children at any level.

36.     Prior to November 7, 2023, Defendants, DOLLAR TREE, INC. and DOLLAR TREE STORES, INC., sold their WanaBana Apple Cinnamon Fruit Purée pouches at their locations at 12625 Western Avenue, Blue Island, Illinois; 8721 S. Stony Island Ave. Chicago, Illinois; 715 E. 47th Street, Chicago, Illinois and 18230 Kedzie Avenue, Hazel Crest, Illinois, and possibly other locations, to Plaintiffs, JESSICA SMITH and JOSEPH SMITH, or others, who provided them to the Plaintiffs' minor daughter, J.S.

37.     On November 7, 2023, Plaintiff, JESSICA SMITH's and JOSEPH SMITH's minor daughter, J.S., was diagnosed with heightened lead levels in her blood after regularly consuming

Defendants, DOLLAR TREE, INC.'s and DOLLAR TREE STORES, INC.'s, above-described WanaBana Apple Cinnamon Fruit Purée for nearly one year.

38.     The FDA's Department of Health and Human Services conducted an inspection from December 4th to December 14th, 2023 of the Ecuadorian facility, called Austrofood, where the Wanabana products were processed and mixed, as well as Austrofood's manufacturing procedures and documents.

39.     The FDA found that Austrofood had documentation of testing results and analyses for the Wanabana products at issue that were created prior to the year 2023.  The FDA found that this documentation showed that Austrofood had identified lead as a potential hazard in the raw materials used for the Wanabana products at issue, including cinnamon, but failed to conduct or perform preventative control for lead in the cinnamon.  The FDA also found that Austrofood failed to sample and test the cinnamon and other raw materials for heavy metals, including lead.

40.     The FDA found that these failures by Austrofood violated Current Good Manufacturing Practice (21 C.F.R. Part 117) and the Federal Food, Drug, and Cosmetic Act (21 U.S.C. § 331(uu)).

41.     If reasonable testing for the presence of lead in the ingredients for the Wanabana products at issue had been conducted prior to the products being sold or otherwise provided to Plaintiffs, unsafe levels of lead would have been found.

42.     On and prior to November 7, 2023, Defendants, DOLLAR TREE, INC. and DOLLAR TREE STORES, INC., were not only in the business of operating retail stores.  They were also manufacturers, packagers and labelers of several FDA-regulated products, individually and via their subsidiaries.  Defendants were in the business of inspecting, analyzing and testing manufacturing processes, finished products, raw materials and chemical ingredients for safety and

labeling purposes.

43.     A reasonable corporation in a similar position to Defendants, DOLLAR TREE, INC. and DOLLAR TREE STORES, INC., would have obtained Austrofood's testing and analyses documentation when Austrofood created it and recognized that the design and manufacture of the Wanabana products at issue violated their policies, standards and vendor terms and conditions; Current Good Manufacturing Practice (21 C.F.R. Part 117); and the Federal Food, Drug, and Cosmetic Act (21 U.S.C. § 331(uu)), including because no testing for the presence of lead was conducted even though the presence of lead in cinnamon was a known potential hazard.

44.     A reasonable corporation in a similar position to Defendants, DOLLAR TREE, INC. and DOLLAR TREE STORES, INC., would have refused to import, advertise, market, distribute and sell the Wanabana products at issue that were made without the ingredients being tested for the presence of lead.

45.     A reasonable corporation in a similar position to Defendants, DOLLAR TREE, INC. and DOLLAR TREE STORES, INC., would have refused to import, advertise, market, distribute and sell the Wanabana products at issue without confirming that their design and manufacturing process complied with policies, standards and vendor terms and conditions; Current Good Manufacturing Practices; and the Federal Food, Drug, and Cosmetic Act, including that their ingredients were tested for the presence of lead and did not contain unsafe levels of lead.

46.     A reasonable corporation in a similar position to Defendants, DOLLAR TREE, INC. and DOLLAR TREE STORES, INC., would have complied with its own policies and standards, including the above-described policies, standards and vendor terms and conditions, and ensured that the Wanabana products at issue did not contain lead and otherwise adhered to quality and safety requirements of the Consumer Product Safety Commission and the Food and Drug

Administration; and complied with applicable laws and regulations and the import requirements of the United States, including Current Good Manufacturing Practice and the Federal Food, Drug, and Cosmetic Act.

47.     If Defendants, DOLLAR TREE, INC. and DOLLAR TREE STORES, INC., had tested the raw materials, including cinnamon, for the presence of lead and/or required the manufacturers to test the raw materials, including cinnamon, for the presence of lead, prior to selling the Wanabana products at issue to the public, including Plaintiffs, they would have found lead and should not have place the products for sale.

48.     Prior to selling its WanaBana Apple Cinnamon Fruit Purée pouches to Plaintiffs, JESSICA SMITH and JOSEPH SMITH, Defendants, DOLLAR TREE, INC. and DOLLAR TREE STORES, INC., knew or should have known that the above-described food and food pouches manufacturing and testing processes lacked preventative control for lead, lacked reasonable and sufficient testing of the raw materials, including cinnamon, for the presence of lead, and otherwise violated policies, standards and vendor terms and conditions; Current Good Manufacturing Practice (21 C.F.R. Part 117) and the Federal Food, Drug, and Cosmetic Act (21 U.S.C. § 331(uu)).

49.     Prior to selling its WanaBana Apple Cinnamon Fruit Purée pouches to Plaintiffs, JESSICA SMITH and JOSEPH SMITH, Defendants, DOLLAR TREE, INC. and DOLLAR TREE STORES, INC., knew or should have known that the above-described food and food pouches contained new active ingredients that are poisonous and otherwise hazardous that were not the same as corresponding food pouches that did not contain lead.

50.     Prior to selling its WanaBana Apple Cinnamon Fruit Purée pouches to Plaintiffs, JESSICA SMITH and JOSEPH SMITH, Defendants, DOLLAR TREE, INC. and DOLLAR TREE STORES, INC., knew or should have known that the above-described food and food pouches

40

contained active ingredients that are poisonous and otherwise hazardous.

51.     Prior to selling its WanaBana Apple Cinnamon Fruit Purée pouches to Plaintiffs, JESSICA SMITH and JOSEPH SMITH, Defendants, DOLLAR TREE, INC. and DOLLAR TREE STORES, INC., knew or should have known that the above-described food and food pouches were adulterated products.

52.     Prior to selling its WanaBana Apple Cinnamon Fruit Purée pouches to Plaintiffs, JESSICA SMITH and JOSEPH SMITH, Defendants, DOLLAR TREE, INC. and DOLLAR TREE STORES, INC., knew or should have known that the above-described food and food pouches' labeling did not include the presence of lead.

53.     Prior to November 7, 2023, Plaintiffs, JESSICA SMITH and JOSEPH SMITH, read and relied upon Defendant, DOLLAR TREE, INC.'s and DOLLAR TREE STORES, INC.'s, labels and instructions and used Defendant, DOLLAR TREE, INC.'s and DOLLAR TREE STORES, INC.'s, food and food pouches as intended.

54.     At all relevant times, it was the duty of Defendants, DOLLAR TREE, INC. and DOLLAR TREE STORES, INC., to exercise reasonable care in the sale of its products such that they were safe for consumers in general and Plaintiff, JESSICA SMITH's and JOSEPH SMITH's minor daughter, J.S., in particular.

55.     Prior to November 7, 2023, Defendants, DOLLAR TREE, INC. and DOLLAR TREE STORES, INC., did breach their duty and were guilty of one or more, or all, of the following negligent acts and/or omissions:

(a)     Distributed and sold food and food pouches that contained lead;

(b)     Distributed and sold food and food pouches that were adulterated;

(c)     Distributed and sold food and food pouches that were misbranded;

41

(d)     Distributed and sold food and food pouches while misrepresenting their safety, healthiness, ingredients, and effects;

(e)     Distributed and sold food and food pouches while concealing their ingredients and effects;

(f)     Distributed and sold food and food pouches with an additive that had not undergone the FDA submission, review, and approval process;

(g)     Distributed and sold food and food pouches that had not been adequately tested and analyzed;

(h)     Distributed and sold food and food pouches in violation of Defendants' policies and standards;

(i)     Failed to review the products' testing and manufacturing processes;

(j)     Failed to recognize that the products' testing and manufacturing processes violated Defendants' policies and standards;

(k)     Failed to recognize that the products' testing and manufacturing processes violated Current Good Manufacturing Practice (21 C.F.R. Part 117) and the Federal Food, Drug, and Cosmetic Act (21 U.S.C. § 331(uu));

(l)     Failed to discover the presence of lead in the products, including their raw materials;

(m)     Failed to warn about the presence of lead in their food and food pouches; and/or

(n)     Were otherwise careless and negligent in importing, advertising, marketing, distributing and selling of the above-described food and food pouches.

47.     As a proximate result of one or more, or all, of the foregoing negligent acts and/or omissions of Defendants, DOLLAR TREE, INC. and DOLLAR TREE STORES, INC., Plaintiff, JESSICA SMITH's and JOSEPH SMITH's minor daughter, J.S., was caused to suffer severe personal, pecuniary, and debilitating injuries for which she has sought, and in the future must seek, medical care and attention and for which she has been kept, and will in the future be kept, from attending to her ordinary affairs and duties, and as a result of the foregoing, Plaintiff, JESSICA SMITH's and JOSEPH SMITH's minor daughter, J.S., has become, and will in the future continue

to become, responsible for sums of money for medical and hospital care.

WHEREFORE, Plaintiffs, JESSICA SMITH and JOSEPH SMITH, on behalf of J.S., a minor, respectfully pray for judgment in their favor and against Defendants, DOLLAR TREE, INC. and DOLLAR TREE STORES, INC., and each of them, in an amount in excess of $75,000.00 that will fairly and adequately compensate their minor daughter, J.S., together with costs of this suit, and for such other and further relief as is just and adequate.

## COUNT VII - BREACH OF IMPLIED WARRANTY
### (Jessica Smith and Joseph Smith o/b/o J.S. v. Dollar Tree)

1-37. Plaintiffs, JESSICA SMITH and JOSEPH SMITH, repeat, reallege, and incorporate by reference Paragraphs 1 to 37 of Count VI of their Complaint at Law as though fully set forth herein.

38. On and prior to November 7, 2023, Defendants, DOLLAR TREE, INC. and DOLLAR TREE STORES, INC., were not only in the business of operating retail stores. They were also manufacturers, packagers and labelers of several FDA-regulated products, individually and via their subsidiaries. Defendants were in the business of inspecting, analyzing and testing manufacturing processes, raw materials and chemical ingredients for safety and labeling purposes.

39. At all relevant times, Paragraph 2-314(2)(c) of the Illinois Uniform Commercial Code, 810 ILCS 2-314(2)(c), was in full force and effect.

40. At the time of the delivery of the above-described food pouches, Defendants, DOLLAR TREE, INC. and DOLLAR TREE STORES, INC., then and there impliedly warranted that these products were of merchantable quality and fit for the ordinary purpose for which they were used, to be eaten and ingested, including by children.

41. At all relevant times, Plaintiffs were direct or third-party beneficiaries of the above-described implied warranty of merchantability.

42.     Plaintiffs relied upon the products being of merchantable quality and fit for the ordinary purpose for which they were used, to be eaten, including by children, when purchasing and providing the products to the minor Plaintiff, J.S.

43.     Defendants, DOLLAR TREE, INC. and DOLLAR TREE STORES, INC., breached the aforesaid implied warranty of merchantability in that the above-described food and food pouches contained unsafe levels of lead, were not safe for consumption, their consumption caused injury, and otherwise failed to perform in the manner reasonably to be expected in light of their nature and intended function and caused injury during normal use.

44.     By reason of the aforesaid breaches of implied warranty by Defendants, DOLLAR TREE, INC. and DOLLAR TREE STORES, INC., Plaintiff, JESSICA SMITH's and JOSEPH SMITH's minor daughter, J.S., was caused to suffer severe personal, pecuniary, and debilitating injuries for which she has sought, and in the future must seek, medical care and attention and for which she has been kept, and will in the future be kept, from attending to her ordinary affairs and duties, and as a result of the foregoing, Plaintiff, JESSICA SMITH's and JOSEPH SMITH's minor daughter, J.S., has become, and will in the future continue to become, responsible for sums of money for medical and hospital care.

WHEREFORE, Plaintiffs, JESSICA SMITH and JOSEPH SMITH, on behalf of J.S., a minor, respectfully pray for judgment in their favor and against Defendants, DOLLAR TREE, INC. and DOLLAR TREE STORES, INC., and each of them, in an amount in excess of $75,000.00 that will fairly and adequately compensate their minor daughter, J.S., together with costs of this suit, and for such other and further relief as is just and adequate.

### COUNT VIII - BREACH OF EXPRESS WARRANTY
### (Jessica Smith and Joseph Smith o/b/o J.S. v. Dollar Tree)

1-37.     Plaintiffs, JESSICA SMITH and JOSEPH SMITH, repeat, reallege, and

incorporate by reference Paragraphs 1 to 37 of Count VI of their Complaint at Law as though fully set forth herein.

38.     On and prior to November 7, 2023, Defendants, DOLLAR TREE, INC. and DOLLAR TREE STORES, INC., were not only in the business of operating retail stores.  They were also manufacturers, packagers and labelers of several FDA-regulated products, individually and via their subsidiaries.  Defendants were in the business of inspecting, analyzing and testing manufacturing processes, finished products, raw materials and chemical ingredients for safety and labeling purposes.

39.     On and prior to November 7, 2023, Defendants, DOLLAR TREE, INC. and DOLLAR TREE STORES, INC., by and through their above-described control of their vendors, including the manufacturers of the Wanabana products at issue, chose, approved and/or adopted the above-described labeling of those products.

40.     At the time of the delivery of the above-described food pouches, Defendants, DOLLAR TREE, INC. and DOLLAR TREE STORES, INC., then and there expressly warranted or affirmed that these products were of merchantable quality and fit for the ordinary purpose for which they were used in one or more of the following ways:

(a)     Chose, approved and/or adopted labeling for the products with the words "I AM FRUIT", "No preservatives", "Gluten free", "NO SUGAR ADDED", and "KOSHER";

(b)     Chose, approved and/or adopted labeling for the products with the list of ingredients representing that the only ingredients were "Apple puree, cinnamon powder, acidulant: citric acid.";

(c)     Advertised and marketed the products in Defendants' websites, social media, circulars and/or other methods that included product labeling described above;

(d)     Placed the products with the above-described labeling for sale for consumption by the public and children in their retail stores; and/or

(e)      Showed the above-described products' labeling in their retail stores.

40.      Defendants, DOLLAR TREE, INC. and DOLLAR TREE STORES, INC., through the written packaging, labeling, and advertising related to the products expressly warranted that its products only contained fruit, contained no preservatives, only contained the ingredients on the list of ingredients, were safe and fit for the purposes intended, that they were merchantable quality, that they were healthy and safe for human consumption, and that they did not pose dangerous health risks.

41.      Plaintiffs read and relied upon the express warranties by Defendants, DOLLAR TREE, INC. and DOLLAR TREE STORES, INC., when purchasing and providing the products to the minor Plaintiff, J.S.

42.      At all relevant times, Paragraph 2-313(1) of the Illinois Uniform Commercial Code, 810 ILCS 2-313(1), was in full force and effect.

43.      At all relevant times, Plaintiffs were direct or third-party beneficiaries of the above-described express warranty of merchantability.

44.      Defendants, DOLLAR TREE, INC. and DOLLAR TREE STORES, INC., breached the aforesaid express warranty of merchantability in that the above-described food and food pouches failed to include lead in the list of ingredients, incorrectly claimed that the products only contained fruit, incorrectly claimed that the products contained no preservatives, contained unsafe levels of lead, were not safe for consumption, their consumption caused injury, and otherwise failed to perform in the manner reasonably to be expected in light of their nature and intended function and caused injury during normal use.

45.      By reason of the aforesaid breaches of express warranty by Defendants, DOLLAR TREE, INC. and DOLLAR TREE STORES, INC., Plaintiff, JESSICA SMITH's and JOSEPH

SMITH's minor daughter, J.S., was caused to suffer severe personal, pecuniary, and debilitating injuries for which she has sought, and in the future must seek, medical care and attention and for which she has been kept, and will in the future be kept, from attending to her ordinary affairs and duties, and as a result of the foregoing, Plaintiff, JESSICA SMITH's and JOSEPH SMITH's minor daughter, J.S., has become, and will in the future continue to become, responsible for sums of money for medical and hospital care.

WHEREFORE, Plaintiffs, JESSICA SMITH and JOSEPH SMITH, on behalf of J.S., a minor, respectfully pray for judgment in their favor and against Defendants, DOLLAR TREE, INC. and DOLLAR TREE STORES, INC., and each of them, in an amount in excess of $75,000.00 that will fairly and adequately compensate their minor daughter, J.S., together with costs of this suit, and for such other and further relief as is just and adequate.

### COUNT IX - FAMILY EXPENSE ACT
### <u>(Jessica Smith and Joseph Smith v. Dollar Tree)</u>

1.      Plaintiffs, JESSICA SMITH and JOSEPH SMITH, repeat, reallege, and incorporate by reference Counts VI through VIII of their Complaint at Law, together and in the alternative, as though fully set forth herein.

2.      At the time she tested positive for heightened lead levels, J.S. was a minor and Plaintiffs, JESSICA SMITH and JOSEPH SMITH, were the parents of J.S.

3.      As a proximate result of one or more, or all, of the foregoing negligent acts and/or omissions of Defendants, DOLLAR TREE, INC. and DOLLAR TREE STORES, INC., Plaintiff, JESSICA SMITH's and JOSEPH SMITH's minor daughter, J.S., sustained injuries and damages of a personal and pecuniary nature, necessitating medical treatment, and resulting in medical expenses for her medical treatment.

4.      Plaintiffs, JESSICA SMITH and JOSEPH SMITH, as parents of J.S., incurred

medical expenses for the treatment provided to J.S. when she was a minor.

5.     This action is brought pursuant to the Family Expense Act, 750 ILCS 65/15.

WHEREFORE, Plaintiffs, JESSICA SMITH and JOSEPH SMITH, respectfully pray for judgment against Defendants, DOLLAR TREE, INC. and DOLLAR TREE STORES, INC., and each of them, in such sum as will reasonably and fairly compensate Plaintiffs, JESSICA SMITH and JOSEPH SMITH, for the medical expenses they incurred for treatment of their daughter, J.S., a minor, resulting from the acts and omissions of Defendants, DOLLAR TREE, INC. and DOLLAR TREE STORES, INC., together with costs of this suit, and for such other and further relief as is just and adequate.

### COUNT X - NEGLIGENCE
### (Jessica Smith and Joseph Smith o/b/o J.S. v. Austrofood)

1.     Plaintiffs adopt and incorporate the allegations in the Allegations Common to All Manufacturers, above, as though fully set forth herein.

2.     On and prior to November 7, 2023, Defendant, AUSTROFOOD S.A.S., was a company doing business in the State of Illinois.

3.     On and prior to November 7, 2023, Defendant, AUSTROFOOD CIA. LTDA., was a company doing business in the State of Illinois.

4.     On and prior to November 7, 2023, Defendants, AUSTROFOOD S.A.S. and/or AUSTROFOOD CIA. LTDA., applied for, published, obtained, owned and registered the Logo and Trademark "WANABANA".

5.     On and prior to November 7, 2023, Defendants, AUSTROFOOD S.A.S. and AUSTROFOOD CIA. LTDA., were doing business in the design, manufacture, advertising, marketing, distribution and/or sale of WanaBana food and food pouches, including WanaBana Apple Cinnamon Fruit Purée.

6. On and prior to November 7, 2023, Defendants, AUSTROFOOD S.A.S. and AUSTROFOOD CIA. LTDA., earned income, reaped profits and/or otherwise economically benefitted from the design, manufacture, advertising, marketing, distribution and/or sale of WanaBana food and food pouches, including WanaBana Apple Cinnamon Fruit Purée.

7. On and prior to November 7, 2023, Defendants, AUSTROFOOD S.A.S. and AUSTROFOOD CIA. LTDA., earned income, reaped profits and/or otherwise economically benefitted from the ownership, licensing or other use of the Trademark for the name "WANABANA" and its design and logo.

8. At all times relevant and material hereto, Defendants, AUSTROFOOD S.A.S. and AUSTROFOOD CIA. LTDA., intentionally and purposefully sought out, marketed to, sold and delivered its food and food pouches, including but not limited to, Wanabana Apple Cinnamon Fruit Purée, to nationwide distributors and retailers in the USA, including but not limited to, Amazon.com, Dollar Tree, Family Dollar, Sam's Club, Schnucks, Weis and others, intentionally directing the products to as many forums as possible.

9. At all times relevant and material hereto, Defendants, AUSTROFOOD S.A.S. and AUSTROFOOD CIA. LTDA., intentionally and purposefully sought out, marketed to, sold and delivered its food and food pouches, including but not limited to, Wanabana Apple Cinnamon Fruit Purée, to retailers that had multiple locations in Illinois, including but not limited to, Dollar Tree with 927 Illinois stores, Family Dollar with 197 stores in Illinois, Sam's Club with 25 stores in Illinois, and Schnucks with 33 locations in Illinois, with the express aim that the products would be sold in Illinois.

10. At all times relevant and material hereto, Defendants, AUSTROFOOD S.A.S. and AUSTROFOOD CIA. LTDA., had actual knowledge that its food and food pouches, including but

not limited to, Wanabana Apple Cinnamon Fruit Purée, were delivered to nationwide distributors and retailers in the USA, including but not limited to, Amazon.com, Dollar Tree, Family Dollar, Sam's Club, Schnucks, Weis and others.

11. At all times relevant and material hereto, Defendants, AUSTROFOOD S.A.S. and AUSTROFOOD CIA. LTDA., had actual knowledge that its food and food pouches, including but not limited to, Wanabana Apple Cinnamon Fruit Purée, were delivered to retailers that had multiple locations in Illinois, including but not limited to, Dollar Tree with 927 Illinois stores, Family Dollar with 197 stores in Illinois, Sam's Club with 25 stores in Illinois, and Schnucks with 33 locations in Illinois.

12. Defendants, AUSTROFOOD S.A.S. and AUSTROFOOD CIA. LTDA., have purposefully directed their activities at the State of Illinois and delivered its products into the stream of commerce with the expectation that they will be purchased by consumers in the State of Illinois and purposefully availed themselves of the privilege of conducting activities within the State of Illinois, thus invoking the benefits and protections of its laws.

13. There is no federal regulation regarding lead contamination of food and food pouches that would preempt the Plaintiffs' state-law claims.

14. Defendants, AUSTROFOOD S.A.S. and AUSTROFOOD CIA. LTDA., forfeit any shield of federal preemption because they designed, manufactured, marketed, distributed and sold unapproved, adulterated, and/or misbranded food, including WanaBana Apple Cinnamon Fruit Purée. Plaintiffs, JESSICA SMITH's and JOSEPH SMITH's, state law claims do not conflict with the federal regulatory scheme and do not require anything different or additional than what federal law already requires.

15. On and prior to November 7, 2023, Defendants, AUSTROFOOD S.A.S. and

AUSTROFOOD CIA. LTDA., represented to the public, including Plaintiffs, JESSICA SMITH and JOSEPH SMITH, that they "have a team of highly qualified people, controlled processes and a food safety management system, which allows us to guarantee the safety of our products and a continuous improvement of our processes" and that they "carry a production line with the highest standards in the market, evidenced in the certifications obtained year after year."

16.     Prior to November 7, 2023, Defendant, Defendants, AUSTROFOOD S.A.S. and AUSTROFOOD CIA. LTDA., registered with the FDA Foreign Supplier Verification Program ("FSVP") as an supplier and/or importer of Wanabana products.  Pursuant to FSVP regulations it was required to conduct a written hazard analysis for the Wanabana products, identify and assess known or reasonably foreseeable hazards, require controls to eliminate the hazards and document its analyses, assessments and controls.

17.     On and prior to November 7, 2023, Defendants, AUSTROFOOD S.A.S. and AUSTROFOOD CIA. LTDA., controlled and/or had the authority to control the sourcing of ingredients, testing, manufacturing process, quality assurance protocols, design, packaging, labeling, marketing, advertising, promotion, distribution, and sales of their products.  Defendants therefore had control over both the contents and the labeling of their products.

18.     On and prior to November 7, 2023, Defendants, AUSTROFOOD S.A.S. and AUSTROFOOD CIA. LTDA., marketed the above-described food and food pouches, including WanaBana Apple Cinnamon Fruit Purée, for consumption by children, including but not limited to via advertising on their websites and social media targeted at the United States.

19.     On and prior to November 7, 2023, Defendants, AUSTROFOOD S.A.S. and AUSTROFOOD CIA. LTDA., labeled the above-described food and food pouches, including WanaBana Apple Cinnamon Fruit Purée, with the words "I AM FRUIT", "No preservatives",

"Gluten free", "NO SUGAR ADDED", and "KOSHER".

20.     On and prior to November 7, 2023, Defendants, AUSTROFOOD S.A.S. and AUSTROFOOD CIA. LTDA., labeled the above-described food and food pouches, with a list of ingredients representing that the only ingredients were "Apple puree, cinnamon powder, acidulant: citric acid." A copy of the front and back of the packaging and labeling is attached below.



21.     Since the 1990s, if not earlier, it has been well-known in the food industry that spices, including cinnamon, present a risk of lead exposure.  Spices can accumulate lead from natural sources such as soil and water; from unnatural sources such as gasoline or other pollutants; or from mixing lead with cinnamon to boost color or weight and increase the value of the product.

22.     On and prior to November 7, 2023, Defendants, AUSTROFOOD S.A.S. and AUSTROFOOD CIA. LTDA., were aware of the risk of lead in spices, including cinnamon.

23.     Lead is not generally recognized as safe but, rather, is considered unsafe for

ingestion by children at any level.

24.     On and prior to November 7, 2023, the Illinois Lead Poisoning Prevention Act was enacted for the purpose of public safety and read, in relevant part,

> No person shall sell, have, offer for sale, or transfer toys, furniture, clothing, accessories, jewelry, decorative objects, edible items, candy, food, dietary supplements, or other articles used by or intended to be chewable by children that contain a lead-bearing substance.

410 ILCS 45/4.

25.     On and prior to November 7, 2023, the Cook County, Illinois Lead Poisoning Prevention Ordinance was enacted for the purpose of public safety and read, in relevant part,

> "No Person shall use or apply Lead-Bearing Substances:
> ***
> (c) In or upon any items, including, but not limited to, clothing, accessories, jewelry, decorative objects, edible items, candy, food, spices, cosmetics, objects used to prepare or serve food, dietary supplements, toys, furniture, or other articles used by or intended to be chewable or consumed by Children; ..."

Cook County, IL, Code § 38-254

26.     On and prior to November 7, 2023, Defendants, AUSTROFOOD S.A.S. and AUSTROFOOD CIA. LTDA., had a duty to refrain from selling food that contained lead.

27.     Defendants, AUSTROFOOD S.A.S. and AUSTROFOOD CIA. LTDA., used a manufacturing process that resulted in the food, including WanaBana Apple Cinnamon Fruit Purée, becoming contaminated with unsafe levels of poisonous and otherwise hazardous lead.

28.     Because Defendants, AUSTROFOOD S.A.S. and AUSTROFOOD CIA. LTDA., caused or allowed the above-described food to contain new additives of lead that are poisonous and otherwise hazardous, they were not the same as corresponding food that did not contain lead.

29.     Because Defendants, AUSTROFOOD S.A.S. and AUSTROFOOD CIA. LTDA., caused or allowed the above-described food to contain new additives of lead that are poisonous

and otherwise hazardous, they were entirely new food products with an additive that had never gone through the U.S. Food and Drug Administration ("FDA") submission, review, and approval process.

30.     Because Defendants, AUSTROFOOD S.A.S. and AUSTROFOOD CIA. LTDA., caused or allowed the above-described food and food pouches, including WanaBana Apple Cinnamon Fruit Purée, to contain lead that is poisonous and otherwise hazardous, they were adulterated products.

31.     Defendants, AUSTROFOOD S.A.S. and AUSTROFOOD CIA. LTDA., labeled the food and food pouches, including WanaBana Apple Cinnamon Fruit Purée, but said labeling did not include the presence of unsafe levels of poisonous and otherwise hazardous lead.

32.     Prior to November 7, 2023, Defendants, AUSTROFOOD S.A.S. and AUSTROFOOD CIA. LTDA., sold the products, including WanaBana Apple Cinnamon Fruit Purée, in Cook County, Illinois, to Plaintiffs, JESSICA SMITH and JOSEPH SMITH, or to others who, in turn, sold them to Plaintiffs, JESSICA SMITH and JOSEPH SMITH, who fed them to their minor daughter, J.S.

33.     Prior to November 7, 2023, Plaintiffs, JESSICA SMITH and JOSEPH SMITH, purchased the above-described WanaBana Apple Cinnamon Fruit Purée pouches at Dollar Tree locations at 12625 Western Avenue, Blue Island, Illinois; 8721 S. Stony Island Ave. Chicago, Illinois; 715 E. 47th Street, Chicago, Illinois and 18230 Kedzie Avenue, Hazel Crest, Illinois, and possibly other locations.

34.     Prior to November 7, 2023, Plaintiffs, JESSICA SMITH and JOSEPH SMITH, read and relied upon Defendants, AUSTROFOOD S.A.S.'s and AUSTROFOOD CIA. LTDA.'s labels and ingredients and used their above-described products as intended.

35.     On November 7, 2023, Plaintiff, JESSICA SMITH's and JOSEPH SMITH's minor daughter, J.S., was diagnosed with heightened and toxic lead levels in her blood after regularly consuming Defendants, AUSTROFOOD S.A.S.'s and AUSTROFOOD CIA. LTDA.'s food for nearly one year.

36.     From December 4th to December 14th, 2023, the FDA's Department of Health and Human Services conducted an inspection of the Defendants, AUSTROFOOD S.A.S.'s and AUSTROFOOD CIA. LTDA.'s, Ecuadorian facility where the Wanabana products were processed and mixed, as well as their manufacturing procedures and documents.

37.     The FDA found that Defendants, AUSTROFOOD S.A.S. and AUSTROFOOD CIA. LTDA., had documentation of testing results and analyses for the Wanabana products at issue that were created prior to the year 2023. The FDA found that this documentation showed that Defendants had identified lead as a potential hazard in the raw materials used for the Wanabana products at issue, including cinnamon, but failed to conduct or perform preventative control for lead in the cinnamon. The FDA also found that Defendants failed to sample and test the cinnamon and other raw materials for heavy metals, including lead.

38.     The FDA found that these failures by Defendants, AUSTROFOOD S.A.S. and AUSTROFOOD CIA. LTDA., violated Current Good Manufacturing Practice (21 C.F.R. Part 117) and the Federal Food, Drug, and Cosmetic Act (21 U.S.C. § 331(uu)).

39.     At all times relevant, it was the duty of Defendants, AUSTROFOOD S.A.S. and AUSTROFOOD CIA. LTDA., to exercise reasonable care in the design, manufacture, and sale of the products such that they were safe for consumers in general and Plaintiff, JESSICA SMITH's and JOSEPH SMITH's minor daughter, J.S., in particular.

40.     If Defendants, AUSTROFOOD S.A.S. and AUSTROFOOD CIA. LTDA., had

performed or required a reasonable review of their hazard evaluation processes and preventative controls prior to the products being sold or otherwise provided to Plaintiffs, the lack of testing for the known risk of lead would have been discovered and such testing should have been performed and the lead contamination would have been discovered.

41.     If Defendants, AUSTROFOOD S.A.S. and AUSTROFOOD CIA. LTDA., had performed or required reasonable testing for the presence of lead in the ingredients for the Wanabana products at issue prior to the products being sold or otherwise provided to Plaintiffs, unsafe levels of lead would have been found and the products should not have been delivered to the Plaintiffs.

42.     Prior to importing, distributing and/or selling its WanaBana Apple Cinnamon Fruit Purée pouches Defendants, WANABANA LLC, WANABANA USA LLC, and WANABANA EXCHANGE LLC, knew or should have known that the above-described food and food pouches manufacturing and testing processes lacked preventative control for lead, lacked reasonable and sufficient testing of the raw materials, including cinnamon, for the presence of lead, and otherwise violated policies, standards and vendor terms and conditions; Current Good Manufacturing Practice (21 C.F.R. Part 117) and the Federal Food, Drug, and Cosmetic Act (21 U.S.C. § 331(uu)).

43.     Prior to importing, distributing and/or selling its WanaBana Apple Cinnamon Fruit Purée pouches Defendants, WANABANA LLC, WANABANA USA LLC, and WANABANA EXCHANGE LLC, knew or should have known that the above-described food and food pouches contained unsafe levels of lead.

44.     Prior to November 7, 2023, Defendants, AUSTROFOOD S.A.S. and AUSTROFOOD CIA. LTDA., did breach their duty and were guilty of one or more, or all, of the following negligent acts and/or omissions:

(a) Designed, manufactured, and sold food and food pouches that contained lead;

(b) Designed, manufactured, and sold food and food pouches that were adulterated;

(c) Designed, manufactured, and sold food and food pouches that were misbranded;

(d) Designed, manufactured, and sold food and food pouches while misrepresenting their ingredients and effects;

(e) Designed, manufactured, and sold food and food pouches while concealing their ingredients and effects;

(f) Designed, manufactured, and sold food and food pouches with an additive that had not undergone the FDA submission, review, and approval process;

(g) Failed to conduct or require reasonable safety procedures related to the presence of lead;

(h) Failed to warn about the presence of lead in their food and food pouches; and/or

(i) Were otherwise careless and negligent in their design, manufacture, and sale of the above-described food and food pouches.

45. As a proximate result of one or more, or all, of the foregoing negligent acts and/or omissions of Defendants, AUSTROFOOD S.A.S. and AUSTROFOOD CIA. LTDA., Plaintiff, JESSICA SMITH's and JOSEPH SMITH's minor daughter, J.S., was caused to suffer severe personal, pecuniary, and debilitating injuries for which she has sought, and in the future must seek, medical care and attention and for which she has been kept, and will in the future be kept, from attending to her ordinary affairs and duties, and as a result of the foregoing, Plaintiff, JESSICA SMITH's and JOSEPH SMITH's minor daughter, J.S., has become, and will in the future continue to become, responsible for sums of money for medical and hospital care.

WHEREFORE, Plaintiffs, JESSICA SMITH and JOSEPH SMITH, on behalf of J.S., a minor, respectfully pray for judgment in their favor and against Defendants, AUSTROFOOD S.A.S. and AUSTROFOOD CIA. LTDA., and each of them, in an amount in excess of $75,000.00 that will fairly and adequately compensate their minor daughter, J.S, together with costs of this suit, and for such other and further relief as is just and adequate.

## COUNT XI - STRICT LIABILITY
### (Jessica Smith and Joseph Smith o/b/o J.S. v. Austrofood)

1-38.    Plaintiffs, JESSICA SMITH and JOSEPH SMITH, repeat, reallege, and incorporate by reference Paragraphs 1 through 38 of Count X of their Complaint as though fully set forth herein.

39.    The above-described food and food pouches that Defendants, AUSTROFOOD S.A.S. and AUSTROFOOD CIA. LTDA., provided to Plaintiffs, JESSICA SMITH and JOSEPH SMITH, were defective and unreasonably dangerous in one or more, or all, of the following respects:

(a)    They contained lead;

(b)    They were adulterated;

(c)    They were misbranded;

(d)    The labels misrepresented the ingredients and additives;

(e)    The labels did not include all of the ingredients and additives;

(f)    They contained poisonous substances;

(g)    They failed to include warnings about lead or other poisonous substances; and/or

(h)    They were otherwise defective and unreasonably dangerous.

40.    The above-described unreasonably dangerous and defective conditions existed at the time the products at issue were manufactured.

41.    As a proximate result of one or more, or all, of the foregoing defective and unreasonably dangerous conditions in the food and food pouches designed, manufactured, and sold by Defendants, AUSTROFOOD S.A.S. and AUSTROFOOD CIA. LTDA., Plaintiff, JESSICA SMITH's and JOSEPH SMITH's minor daughter, J.S., was caused to suffer severe personal, pecuniary, and debilitating injuries for which she has sought, and in the future must seek, medical care and attention and for which she has been kept, and will in the future be kept, from attending to her ordinary affairs and duties, and as a result of the foregoing, Plaintiff, JESSICA SMITH's

58

and JOSEPH SMITH's minor daughter, J.S., has become, and will in the future continue to become, responsible for sums of money for medical and hospital care.

WHEREFORE, Plaintiffs, JESSICA SMITH and JOSEPH SMITH, on behalf of J.S., a minor, respectfully pray for judgment in their favor and against Defendants, AUSTROFOOD S.A.S. and AUSTROFOOD CIA. LTDA., and each of them, in an amount in excess of $75,000.00 that will fairly and adequately compensate their minor daughter, J.S., together with costs of this suit, and for such other and further relief as is just and adequate.

### COUNT XII - BREACH OF IMPLIED WARRANTY
### (Jessica Smith and Joseph Smith o/b/o J.S. v. Austrofood)

1-38. Plaintiffs, JESSICA SMITH and JOSEPH SMITH, repeat, reallege, and incorporate by reference Paragraphs 1 through 38 of Count X of their Complaint at Law as though fully set forth herein.

39. At all relevant times, Paragraph 2-314(2)(c) of the Illinois Uniform Commercial Code, 810 ILCS 2-314(2)(c), was in full force and effect.

40. At the time of the delivery of the above-described food and food pouches, Defendants, AUSTROFOOD S.A.S. and AUSTROFOOD CIA. LTDA., then and there impliedly warranted that these products were of merchantable quality and fit for the ordinary purpose for which they were used.

41. At all relevant times, Plaintiff, JESSICA SMITH's and JOSEPH SMITH's minor daughter, J.S., was a direct or third-party beneficiary of the above-described implied warranty of merchantability.

42. Plaintiffs relied upon the products being of merchantable quality and fit for the ordinary purpose for which they were used, to be eaten, including by children, when purchasing and providing the products to the minor Plaintiff, J.S.

43.     Defendants, AUSTROFOOD S.A.S. and AUSTROFOOD CIA. LTDA., breached the aforesaid implied warranty of merchantability in that the above-described food and food pouches contained unsafe levels of lead, were not safe for consumption, their consumption caused injury, and otherwise failed to perform in the manner reasonably to be expected in light of their nature and intended function and caused injury during normal use.

44.     By reason of the aforesaid breaches of implied warranty by Defendants, AUSTROFOOD S.A.S. and AUSTROFOOD CIA. LTDA., Plaintiff, JESSICA SMITH's and JOSEPH SMITH's minor daughter, J.S., was caused to suffer severe personal, pecuniary, and debilitating injuries for which she has sought, and in the future must seek, medical care and attention and for which she has been kept, and will in the future be kept, from attending to her ordinary affairs and duties, and as a result of the foregoing, Plaintiff, JESSICA SMITH's and JOSEPH SMITH's minor daughter, J.S., has become, and will in the future continue to become, responsible for sums of money for medical and hospital care.

WHEREFORE, Plaintiffs, JESSICA SMITH and JOSEPH SMITH, on behalf of J.S., a minor, respectfully pray for judgment in their favor and against Defendants, AUSTROFOOD S.A.S. and AUSTROFOOD CIA. LTDA., and each of them, in an amount in excess of $75,000.00 that will fairly and adequately compensate their minor daughter, J.S., together with costs of this suit, and for such other and further relief as is just and adequate.

### COUNT XIII - BREACH OF EXPRESS WARRANTY
### (Jessica Smith and Joseph Smith o/b/o J.S. v. Austrofood)

1-38.    Plaintiffs, JESSICA SMITH and JOSEPH SMITH, repeat, reallege, and incorporate by reference Paragraphs 1 through 38 of Count XI of their Complaint at Law as though fully set forth herein.

39.     At all relevant times, Paragraph 2-313(1) of the Illinois Uniform Commercial Code,

810 ILCS 2-313(1), was in full force and effect.

40.     At the time of the delivery of the above-described food pouches, Defendants, AUSTROFOOD S.A.S. and AUSTROFOOD CIA. LTDA., then and there expressly warranted that these products contained only apple puree, cinnamon powder, and citric acid.

41.     At the time of the delivery of the above-described food pouches, Defendants, AUSTROFOOD S.A.S. and AUSTROFOOD CIA. LTDA. then and there expressly warranted that these products were of merchantable quality and fit for the ordinary purpose for which they were used.

42.     At all relevant times, Plaintiff, JESSICA SMITH's and JOSEPH SMITH's minor daughter, J.S., was a direct or third-party beneficiary of the above-described express warranty of merchantability.

43.     Plaintiffs relied upon the products being of merchantable quality and containing only apple puree, cinnamon powder, and citric acid, and otherwise being fit for the ordinary purpose for which they were used, to be eaten, including by children, when purchasing and providing the products to the minor Plaintiff, J.S.

44.     Defendants, AUSTROFOOD S.A.S. and AUSTROFOOD CIA. LTDA., breached the aforesaid express warranty of merchantability in that the above-described food and food pouches contained toxic and hazardous lead and otherwise failed to perform in the manner reasonably to be expected in light of their nature and intended function and caused injury during normal use.

45.     By reason of the aforesaid breaches of express warranty by Defendants, AUSTROFOOD S.A.S. and AUSTROFOOD CIA. LTDA., Plaintiff, JESSICA SMITH's and JOSEPH SMITH's minor daughter, J.S., was caused to suffer severe personal, pecuniary, and

debilitating injuries for which she has sought, and in the future must seek, medical care and attention and for which she has been kept, and will in the future be kept, from attending to her ordinary affairs and duties, and as a result of the foregoing, Plaintiff, JESSICA SMITH's and JOSEPH SMITH's minor daughter, J.S., has become, and will in the future continue to become, responsible for sums of money for medical and hospital care.

WHEREFORE, Plaintiffs, JESSICA SMITH and JOSEPH SMITH, on behalf of J.S., a minor, respectfully pray for judgment in their favor and against Defendants, AUSTROFOOD S.A.S. and AUSTROFOOD CIA. LTDA., and each of them, in an amount in excess of $75,000.00 that will fairly and adequately compensate their minor daughter, J.S., together with costs of this suit, and for such other and further relief as is just and adequate.

## COUNT XIV - FAMILY EXPENSE ACT
### (Jessica Smith and Joseph Smith v. Austrofood)

1. Plaintiffs, JESSICA SMITH and JOSEPH SMITH, repeat, reallege, and incorporate by reference the allegations of Counts X through XIII of their Complaint, together and in the alternative, as though fully set forth herein.

2. At the time she tested positive for heightened lead levels, J.S. was a minor and Plaintiffs, JESSICA SMITH and JOSEPH SMITH, were the parents of J.S.

3. As a proximate result of one or more, or all, of the foregoing acts and/or omissions of Defendants, AUSTROFOOD S.A.S. and AUSTROFOOD CIA. LTDA., Plaintiff, JESSICA SMITH's and JOSEPH SMITH's minor daughter, J.S., sustained injuries and damages of a personal and pecuniary nature, necessitating medical treatment, and resulting in medical expenses for her medical treatment.

4. Plaintiffs, JESSICA SMITH and JOSEPH SMITH, as parents of J.S., incurred medical expenses for the treatment provided to J.S. when she was a minor.

5.     This action is brought pursuant to the Family Expense Act, 750 ILCS 65/15.

WHEREFORE, Plaintiffs, JESSICA SMITH and JOSEPH SMITH, respectfully pray for judgment against Defendants, AUSTROFOOD S.A.S. and AUSTROFOOD CIA. LTDA., and each of them, in such sum as will reasonably and fairly compensate Plaintiffs, JESSICA SMITH and JOSEPH SMITH, for the medical expenses they incurred for treatment of their daughter, J.S., a minor, resulting from the acts and/or omissions of Defendants, AUSTROFOOD S.A.S. and AUSTROFOOD CIA. LTDA., together with costs of this suit, and for such other and further relief as is just and adequate.

### COUNT XV - NEGLIGENCE
### (Jessica Smith and Joseph Smith o/b/o J.S. v. Navis)

1.     Plaintiffs adopt and incorporate the allegations in the Allegations Common to All Manufacturers, above, as though fully set forth herein.

2.     On and prior to November 7, 2023, and continuing to the present, Defendant, GRUPO NAVIS LLC a/k/a NAVIS LLC, was and is registered to do business in Illinois with the Illinois Secretary of State and has had a registered agent in the State of Illinois.

3.     On and prior to November 7, 2023, Defendant, GRUPO NAVIS LLC a/k/a NAVIS LLC, was a limited liability company doing business in the State of Illinois.

4.     On and prior to November 7, 2023, Defendant, GRUPO NAVIS LLC a/k/a NAVIS LLC, earned income, reaped profits and/or otherwise economically benefitted from the design, manufacture, advertising, distribution, marketing and/or sale of WanaBana food and food pouches, including WanaBana Apple Cinnamon Fruit Purée.

5.     At all times relevant and material hereto, Defendant, GRUPO NAVIS LLC a/k/a NAVIS LLC, intentionally and purposefully sought out, marketed to, sold and delivered its food and food pouches, including but not limited to, Wanabana Apple Cinnamon Fruit Purée, to

nationwide distributors and retailers in the USA, including but not limited to, Amazon.com, Dollar Tree, Family Dollar, Sam's Club, Schnucks, Weis and others, intentionally directing the products to as many forums as possible.

6.      At all times relevant and material hereto, Defendant, GRUPO NAVIS LLC a/k/a NAVIS LLC, intentionally and purposefully sought out, marketed to, sold and delivered its food and food pouches, including but not limited to, Wanabana Apple Cinnamon Fruit Purée, to retailers that had multiple locations in Illinois, including but not limited to, Dollar Tree with 927 Illinois stores, Family Dollar with 197 stores in Illinois, Sam's Club with 25 stores in Illinois, and Schnucks with 33 locations in Illinois, with the express aim that the products would be sold in Illinois.

7.      At all times relevant and material hereto, Defendant, GRUPO NAVIS LLC a/k/a NAVIS LLC, had actual knowledge that its food and food pouches, including but not limited to, Wanabana Apple Cinnamon Fruit Purée, were delivered to nationwide distributors and retailers in the USA, including but not limited to, Amazon.com, Dollar Tree, Family Dollar, Sam's Club, Schnucks, Weis and others.

8.      At all times relevant and material hereto, Defendant, GRUPO NAVIS LLC a/k/a NAVIS LLC, had actual knowledge that its food and food pouches, including but not limited to, Wanabana Apple Cinnamon Fruit Purée, were delivered to retailers that had multiple locations in Illinois, including but not limited to, Dollar Tree with 927 Illinois stores, Family Dollar with 197 stores in Illinois, Sam's Club with 25 stores in Illinois, and Schnucks with 33 locations in Illinois.

9.      Defendant, GRUPO NAVIS LLC a/k/a NAVIS LLC, purposefully directed its activities at the State of Illinois and delivered its products into the stream of commerce with the expectation that they will be purchased by consumers in the State of Illinois and purposefully

availed itself of the privilege of conducting activities within the State of Illinois, thus invoking the benefits and protections of its laws.

10.     There is no federal regulation regarding lead contamination of food and food pouches that would preempt the Plaintiffs' state-law claims.

11.     Defendant, GRUPO NAVIS LLC a/k/a NAVIS LLC, forfeits any shield of federal preemption because it designed, manufactured, marketed, distributed and sold unapproved, adulterated, and/or misbranded food, including WanaBana Apple Cinnamon Fruit Purée. Plaintiffs, JESSICA SMITH's and JOSEPH SMITH's, state law claims do not conflict with the federal regulatory scheme and do not require anything different or additional than what federal law already requires.

12.     On and prior to November 7, 2023, Defendant, GRUPO NAVIS LLC a/k/a NAVIS LLC, marketed the above-described food and food pouches, including WanaBana Apple Cinnamon Fruit Purée, for consumption by children.

13.     On and prior to November 7, 2023, Defendant, GRUPO NAVIS LLC a/k/a NAVIS LLC, labeled the above-described food and food pouches, including WanaBana Apple Cinnamon Fruit Purée, with the words "I AM FRUIT", "No preservatives", "Gluten free", "NO SUGAR ADDED", and "KOSHER".

14.     On and prior to November 7, 2023, Defendant, GRUPO NAVIS LLC a/k/a NAVIS LLC, labeled the above-described food and food pouches, with a list of ingredients representing that the only ingredients were "Apple puree, cinnamon powder, acidulant: citric acid." A copy of the front and back of the packaging and labeling is attached below.



15.     Since the 1990s, if not earlier, it has been well-known in the food industry that spices, including cinnamon, present a risk of lead exposure.  Spices can accumulate lead from natural sources such as soil and water; from unnatural sources such as gasoline or other pollutants; or from mixing lead with cinnamon to boost color or weight and increase the value of the product.

16.     On and prior to November 7, 2023, Defendant, GRUPO NAVIS LLC a/k/a NAVIS LLC, was aware of the risk of lead in spices, including cinnamon.

17.     Lead is not generally recognized as safe but, rather, is considered unsafe for ingestion by children at any level.

18.     On and prior to November 7, 2023, the Illinois Lead Poisoning Prevention Act was enacted for the purpose of public safety and read, in relevant part,

> No person shall sell, have, offer for sale, or transfer toys, furniture, clothing, accessories, jewelry, decorative objects, edible items, candy, food, dietary supplements, or other articles used by or intended to be chewable by children that contain a lead-bearing substance.

66

410 ILCS 45/4.

19.     On and prior to November 7, 2023, the Cook County, Illinois Lead Poisoning

Prevention Ordinance was enacted for the purpose of public safety and read, in relevant part,

> "No Person shall use or apply Lead-Bearing Substances:
> ***
> (c) In or upon any items, including, but not limited to, clothing, accessories,
> jewelry, decorative objects, edible items, candy, food, spices, cosmetics,
> objects used to prepare or serve food, dietary supplements, toys, furniture,
> or other articles used by or intended to be chewable or consumed by
> Children; …"

Cook County, IL, Code § 38-254

20.     On and prior to November 7, 2023, Defendant, GRUPO NAVIS LLC a/k/a NAVIS

LLC, had a duty to refrain from selling food that contained lead.

21.     Defendant, GRUPO NAVIS LLC a/k/a NAVIS LLC, used or allowed to be used a

manufacturing process that resulted in its food, including WanaBana Apple Cinnamon Fruit Purée,

becoming contaminated with unsafe levels of poisonous and otherwise hazardous lead.

22.     Because Defendant, GRUPO NAVIS LLC a/k/a NAVIS LLC, caused or allowed

the above-described food to contain new additives of lead that are poisonous and otherwise

hazardous, they were not the same as corresponding food that did not contain lead.

23.     Because Defendant, GRUPO NAVIS LLC a/k/a NAVIS LLC, caused or allowed

the above-described food to contain new additives of lead that are poisonous and otherwise

hazardous, they were entirely new food products with an additive that had never gone through the

U.S. Food and Drug Administration ("FDA") submission, review, and approval process.

24.     Because Defendant, GRUPO NAVIS LLC a/k/a NAVIS LLC, caused or allowed

the above-described food and food pouches, including WanaBana Apple Cinnamon Fruit Purée,

to contain lead that is poisonous and otherwise hazardous, they were adulterated products.

25.     Defendant, GRUPO NAVIS LLC a/k/a NAVIS LLC, labeled the food and food pouches, including WanaBana Apple Cinnamon Fruit Purée, but said labeling did not include the presence of unsafe levels of poisonous and otherwise hazardous lead.

26.     Prior to November 7, 2023, Defendant, GRUPO NAVIS LLC a/k/a NAVIS LLC, sold the products, including WanaBana Apple Cinnamon Fruit Purée, in Cook County, Illinois, to Plaintiffs, JESSICA SMITH and JOSEPH SMITH, or to others who, in turn, sold them to Plaintiffs, JESSICA SMITH and JOSEPH SMITH, who fed them to their minor daughter, J.S.

27.     Prior to November 7, 2023, Plaintiffs, JESSICA SMITH and JOSEPH SMITH, purchased the above-described WanaBana Apple Cinnamon Fruit Purée pouches at Dollar Tree locations at 12625 Western Avenue, Blue Island, Illinois; 8721 S. Stony Island Ave. Chicago, Illinois; 715 E. 47th Street, Chicago, Illinois and 18230 Kedzie Avenue, Hazel Crest, Illinois, and possibly other locations.

28.     Prior to November 7, 2023, Plaintiffs, JESSICA SMITH and JOSEPH SMITH, read and relied upon Defendant, GRUPO NAVIS LLC a/k/a NAVIS LLC's labels and ingredients and used the above-described products as intended.

29.     On November 7, 2023, Plaintiff, JESSICA SMITH's and JOSEPH SMITH's minor daughter, J.S., was diagnosed with heightened and toxic lead levels in her blood after regularly consuming Defendant, GRUPO NAVIS LLC a/k/a NAVIS LLC's food for nearly one year.

30.     From December 4th to December 14th, 2023, the FDA's Department of Health and Human Services conducted an inspection of AUSTROFOOD's Ecuadorian manufacturing facilities where the Wanabana products were processed and mixed, as well as AUSTROFOOD's manufacturing procedures and documents.

31.     The FDA found that AUSTROFOOD had documentation of testing results and analyses for the Wanabana products at issue that were created prior to the year 2023. The FDA found that this documentation showed that AUSTROFOOD had identified lead as a potential hazard in the raw materials used for the Wanabana products at issue, including cinnamon, but failed to conduct or perform preventative control for lead in the cinnamon. The FDA also found that AUSTROFOOD failed to sample and test the cinnamon and other raw materials for heavy metals, including lead.

32.     The FDA found that these failures by AUSTROFOOD violated Current Good Manufacturing Practice (21 C.F.R. Part 117) and the Federal Food, Drug, and Cosmetic Act (21 U.S.C. § 331(uu)).

33.     From February 21st through March 7th, 2024, the Food and Drug Administration conducted an inspection of Defendant, WANABANA USA LLC's, activities to comply with FSVP regulations relating to its import of the Wanabana products at issue.

34.     The FDA found that Defendant, WANABANA USA LLC, failed to consider the required hazard analysis to identify reasonably foreseeable hazards of lead contamination when evaluating its products and when evaluating AUSTROFOOD's procedures, and failed to perform lead testing or require that the products be tested for lead.

35.     The FDA found that Defendant, WANABANA USA LLC's, safety failures violated Federal Regulations related to food safety that applied to WANABANA USA LLC.

36.     From February 27th through March 6th, 2024, the Food and Drug Administration conducted an inspection of Defendant, CARIBBEAN PRODUCE EXCHANGE LLC's, activities to comply with FSVP regulations relating to its import of the Wanabana products at issue.

37.     The FDA found that Defendant, CARIBBEAN PRODUCE EXCHANGE LLC,

failed to consider the required hazard analysis to identify reasonably foreseeable hazards of lead contamination when evaluating its products and when evaluating Austrofood's procedures, and failed to perform lead testing or require that the products be tested for lead.

38.     The FDA found that Defendant, CARIBBEAN PRODUCE EXCHANGE LLC's, safety failures violated Federal Regulations related to food safety that applied to CARIBBEAN PRODUCE EXCHANGE, LLC.

39.     At all times relevant, it was the duty of Defendant, GRUPO NAVIS LLC a/k/a NAVIS LLC, to exercise reasonable care in the design, manufacture, and sale of the products such that they were safe for consumers in general and Plaintiff, JESSICA SMITH's and JOSEPH SMITH's minor daughter, J.S., in particular.

40.     If Defendant, GRUPO NAVIS LLC a/k/a NAVIS LLC, had performed or required a reasonable review of CARIBBEAN PRODUCE EXCHANGE LLC's, WANABANA USA LLC's, and/or AUSTROFOOD's hazard evaluation processes and preventative controls prior to the products being sold or otherwise provided to Plaintiffs, the lack of testing for the known risk of lead would have been discovered and such testing should have been performed and the lead contamination would have been discovered.

41.     If Defendant, GRUPO NAVIS LLC a/k/a NAVIS LLC, had performed or required reasonable testing for the presence of lead in the ingredients for the Wanabana products at issue prior to the products being sold or otherwise provided to Plaintiffs, unsafe levels of lead would have been found and the products should not have been delivered to the Plaintiffs.

42.     Prior to importing, distributing and/or selling its WanaBana Apple Cinnamon Fruit Purée pouches Defendant, GRUPO NAVIS LLC a/k/a NAVIS LLC, knew or should have known that the above-described food and food pouches manufacturing and testing processes lacked

preventative control for lead, lacked reasonable and sufficient testing of the raw materials, including cinnamon, for the presence of lead, and otherwise violated policies, standards and vendor terms and conditions; Current Good Manufacturing Practice (21 C.F.R. Part 117) and the Federal Food, Drug, and Cosmetic Act (21 U.S.C. § 331(uu)).

43.     Prior to importing, distributing and/or selling its WanaBana Apple Cinnamon Fruit Purée pouches Defendant, GRUPO NAVIS LLC a/k/a NAVIS LLC, knew or should have known that the above-described food and food pouches contained unsafe levels of lead.

44.     Prior to November 7, 2023, Defendant, GRUPO NAVIS LLC a/k/a NAVIS LLC, did breach its duty and was guilty of one or more, or all, of the following negligent acts and/or omissions:

(a)     Designed, manufactured, and sold food and food pouches that contained lead;

(b)     Designed, manufactured, and sold food and food pouches that were adulterated;

(c)     Designed, manufactured, and sold food and food pouches that were misbranded;

(d)     Designed, manufactured, and sold food and food pouches while misrepresenting their ingredients and effects;

(e)     Designed, manufactured, and sold food and food pouches while concealing their ingredients and effects;

(f)     Designed, manufactured, and sold food and food pouches with an additive that had not undergone the FDA submission, review, and approval process;

(g)     Failed to conduct or require reasonable safety procedures related to the presence of lead;

(h)     Failed to warn about the presence of lead in their food and food pouches; and/or

(i)     Were otherwise careless and negligent in their design, manufacture, and sale of the above-described food and food pouches.

45.     As a proximate result of one or more, or all, of the foregoing negligent acts and/or omissions of Defendant, GRUPO NAVIS LLC a/k/a NAVIS LLC, Plaintiff, JESSICA SMITH's and JOSEPH SMITH's minor daughter, J.S., was caused to suffer severe personal, pecuniary, and

debilitating injuries for which she has sought, and in the future must seek, medical care and attention and for which she has been kept, and will in the future be kept, from attending to her ordinary affairs and duties, and as a result of the foregoing, Plaintiff, JESSICA SMITH's and JOSEPH SMITH's minor daughter, J.S., has become, and will in the future continue to become, responsible for sums of money for medical and hospital care.

WHEREFORE, Plaintiffs, JESSICA SMITH and JOSEPH SMITH, on behalf of J.S., a minor, respectfully pray for judgment in their favor and against Defendant, GRUPO NAVIS LLC a/k/a NAVIS LLC, in an amount in excess of $75,000.00 that will fairly and adequately compensate their minor daughter, J.S., together with costs of this suit, and for such other and further relief as is just and adequate.

## COUNT XVI - STRICT LIABILITY
### (Jessica Smith and Joseph Smith o/b/o J.S. v. Navis)

1-38. Plaintiffs, JESSICA SMITH and JOSEPH SMITH, repeat, reallege, and incorporate by reference Paragraphs 1 through 38 of Count XV of their Complaint at Law as though fully set forth herein.

39. The above-described food and food pouches that Defendant, GRUPO NAVIS LLC a/k/a NAVIS LLC, provided to Plaintiffs, JESSICA SMITH and JOSEPH SMITH, were defective and unreasonably dangerous in one or more, or all, of the following respects:

(a) They contained lead;

(b) They were adulterated;

(c) They were misbranded;

(d) The labels misrepresented the ingredients and additives;

(e) The labels did not include all of the ingredients and additives;

(f) They contained poisonous substances;

(g) They failed to include warnings about lead or other poisonous substances; and/or

(h)     They were otherwise defective and unreasonably dangerous.

40.     The above-described unreasonably dangerous and defective conditions existed at the time the products at issue were manufactured.

41.     As a proximate result of one or more, or all, of the foregoing defective and unreasonably dangerous conditions in the food and food pouches designed, manufactured, and sold by Defendant, GRUPO NAVIS LLC a/k/a NAVIS LLC, Plaintiff, JESSICA SMITH's and JOSEPH SMITH's minor daughter, J.S., was caused to suffer severe personal, pecuniary, and debilitating injuries for which she has sought, and in the future must seek, medical care and attention and for which she has been kept, and will in the future be kept, from attending to her ordinary affairs and duties, and as a result of the foregoing, Plaintiff, JESSICA SMITH's and JOSEPH SMITH's minor daughter, J.S., has become, and will in the future continue to become, responsible for sums of money for medical and hospital care.

WHEREFORE, Plaintiffs, JESSICA SMITH and JOSEPH SMITH, on behalf of J.S., a minor, respectfully pray for judgment in their favor and against Defendant, GRUPO NAVIS LLC a/k/a NAVIS LLC, in an amount in excess of $75,000.00 that will fairly and adequately compensate their minor daughter, J.S., together with costs of this suit, and for such other and further relief as is just and adequate.

### COUNT XVII - BREACH OF IMPLIED WARRANTY
### (Jessica Smith and Joseph Smith o/b/o J.S. v. Navis)

1-38.     Plaintiffs, JESSICA SMITH and JOSEPH SMITH, repeat, reallege, and incorporate by reference Paragraphs 1 through 38 of Count XV of their Complaint at Law as though fully set forth herein.

39.     At all relevant times, Paragraph 2-314(2)(c) of the Illinois Uniform Commercial Code, 810 ILCS 2-314(2)(c), was in full force and effect.

40.     At the time of the delivery of the above-described food and food pouches, Defendant, GRUPO NAVIS LLC a/k/a NAVIS LLC, then and there impliedly warranted that these products were of merchantable quality and fit for the ordinary purpose for which they were used, to be eaten and ingested, including by children.

41.     At all relevant times, Plaintiff, JESSICA SMITH's and JOSEPH SMITH's minor daughter, J.S., was a direct or third-party beneficiary of the above-described implied warranty of merchantability.

42.     Plaintiffs relied upon the products being of merchantable quality and fit for the ordinary purpose for which they were used, to be eaten, including by children, when purchasing and providing the products to the minor Plaintiff, J.S.

43.     Defendant, GRUPO NAVIS LLC a/k/a NAVIS LLC, breached the aforesaid implied warranty of merchantability in that the above-described food and food pouches contained unsafe levels of lead, were not safe for consumption, their consumption caused injury, and otherwise failed to perform in the manner reasonably to be expected in light of their nature and intended function and caused injury during normal use.

44.     By reason of the aforesaid breaches of implied warranty by Defendant, GRUPO NAVIS LLC a/k/a NAVIS LLC, Plaintiff, JESSICA SMITH's and JOSEPH SMITH's minor daughter, J.S., was caused to suffer severe personal, pecuniary, and debilitating injuries for which she has sought, and in the future must seek, medical care and attention and for which she has been kept, and will in the future be kept, from attending to her ordinary affairs and duties, and as a result of the foregoing, Plaintiff, JESSICA SMITH's and JOSEPH SMITH's minor daughter, J.S., has become, and will in the future continue to become, responsible for sums of money for medical and hospital care.

WHEREFORE, Plaintiffs, JESSICA SMITH and JOSEPH SMITH, on behalf of J.S., a minor, respectfully pray for judgment in their favor and against Defendant, GRUPO NAVIS LLC a/k/a NAVIS LLC, in an amount in excess of $75,000.00 that will fairly and adequately compensate their minor daughter, J.S., together with costs of this suit, and for such other and further relief as is just and adequate.

### COUNT XVIII - BREACH OF EXPRESS WARRANTY
### (Jessica Smith and Joseph Smith o/b/o J.S. v. Navis)

1-38.   Plaintiffs, JESSICA SMITH and JOSEPH SMITH, repeat, reallege, and incorporate by reference Paragraphs 1 through 38 of Count XV of their Complaint at Law as though fully set forth herein.

39.   At all relevant times, Paragraph 2-313(1) of the Illinois Uniform Commercial Code, 810 ILCS 2-313(1), was in full force and effect.

40.   At the time of the delivery of the above-described food pouches, Defendant, GRUPO NAVIS LLC a/k/a NAVIS LLC, then and there expressly warranted that these products contained only apple puree, cinnamon powder, and citric acid.

41.   At the time of the delivery of the above-described food pouches, Defendant, GRUPO NAVIS LLC a/k/a NAVIS LLC, then and there expressly warranted that these products were of merchantable quality and fit for the ordinary purpose for which they were used.

42.   At all relevant times, Plaintiff, JESSICA SMITH's and JOSEPH SMITH's minor daughter, J.S., was a direct or third-party beneficiary of the above-described express warranty of merchantability.

43.   Plaintiffs relied upon the products being of merchantable quality and containing only apple puree, cinnamon powder, and citric acid, and otherwise being fit for the ordinary purpose for which they were used, to be eaten, including by children, when purchasing and

providing the products to the minor Plaintiff, J.S.

44.     Defendant, GRUPO NAVIS LLC a/k/a NAVIS LLC, breached the aforesaid express warranty of merchantability in that the above-described food and food pouches in that the above-described food and food pouches contained toxic and hazardous lead and otherwise failed to perform in the manner reasonably to be expected in light of their nature and intended function and caused injury during normal use.

45.     By reason of the aforesaid breaches of express warranty by Defendant, GRUPO NAVIS LLC a/k/a NAVIS LLC, Plaintiff, JESSICA SMITH's and JOSEPH SMITH's minor daughter, J.S., was caused to suffer severe personal, pecuniary, and debilitating injuries for which she has sought, and in the future must seek, medical care and attention and for which she has been kept, and will in the future be kept, from attending to her ordinary affairs and duties, and as a result of the foregoing, Plaintiff, JESSICA SMITH's and JOSEPH SMITH's minor daughter, J.S., has become, and will in the future continue to become, responsible for sums of money for medical and hospital care.

WHEREFORE, Plaintiffs, JESSICA SMITH and JOSEPH SMITH, on behalf of J.S., a minor, respectfully pray for judgment in their favor and against Defendant, GRUPO NAVIS LLC a/k/a NAVIS LLC, in an amount in excess of $75,000.00 that will fairly and adequately compensate their minor daughter, J.S., together with costs of this suit, and for such other and further relief as is just and adequate.

### COUNT XIX - FAMILY EXPENSE ACT
### (Jessica Smith and Joseph Smith v. Navis)

1.     Plaintiffs, JESSICA SMITH and JOSEPH SMITH, repeat, reallege, and incorporate by reference the allegations of Count XV through XVIII of their Complaint, together and in the alternative, as though fully set forth herein.

2.      At the time she tested positive for heightened lead levels, J.S. was a minor and Plaintiffs, JESSICA SMITH and JOSEPH SMITH, were the parents of J.S.

3.      As a proximate result of one or more, or all, of the foregoing acts and/or omissions of Defendant, GRUPO NAVIS LLC a/k/a NAVIS LLC, Plaintiff, JESSICA SMITH's and JOSEPH SMITH's minor daughter, J.S., sustained injuries and damages of a personal and pecuniary nature, necessitating medical treatment, and resulting in medical expenses for her medical treatment.

4.      Plaintiffs, JESSICA SMITH and JOSEPH SMITH, as parents of J.S., incurred medical expenses for the treatment provided to J.S. when she was a minor.

5.      This action is brought pursuant to the Family Expense Act, 750 ILCS 65/15.

WHEREFORE, Plaintiffs, JESSICA SMITH and JOSEPH SMITH, respectfully pray for judgment against Defendant, GRUPO NAVIS LLC a/k/a NAVIS LLC, in such sum as will reasonably and fairly compensate Plaintiffs, JESSICA SMITH and JOSEPH SMITH, for the medical expenses they incurred for treatment of their daughter, J.S., a minor, resulting from the acts and/or omissions of Defendant, GRUPO NAVIS LLC a/k/a NAVIS LLC, together with costs of this suit, and for such other and further relief as is just and adequate.

### COUNT XX - NEGLIGENCE
### (Jessica Smith and Joseph Smith o/b/o J.S. v. Caribbean Produce)

1.      Plaintiffs adopt and incorporate the allegations in the Allegations Common to All Manufacturers, above, as though fully set forth herein.

2.      On and prior to November 7, 2023, Defendant, CARIBBEAN PRODUCE EXCHANGE, LLC, was a limited liability company doing business in the State of Illinois

3.      On and prior to November 7, 2023, Defendant, CARIBBEAN PRODUCE EXCHANGE, LLC, earned income, reaped profits and/or otherwise economically benefitted from

the design, manufacture, advertising, marketing, distribution and/or sale of WanaBana food and food pouches, including WanaBana Apple Cinnamon Fruit Purée.

4.     At all times relevant and material hereto, Defendant, CARIBBEAN PRODUCE EXCHANGE, LLC, intentionally and purposefully sought out, marketed to, sold and delivered its food and food pouches, including but not limited to, Wanabana Apple Cinnamon Fruit Purée, to nationwide distributors and retailers in the USA, including but not limited to, Amazon.com, Dollar Tree, Family Dollar, Sam's Club, Schnucks, Weis and others, intentionally directing the products to as many forums as possible.

5.     At all times relevant and material hereto, Defendant, CARIBBEAN PRODUCE EXCHANGE, LLC, intentionally and purposefully sought out, marketed to, sold and delivered its food and food pouches, including but not limited to, Wanabana Apple Cinnamon Fruit Purée, to retailers that had multiple locations in Illinois, including but not limited to, Dollar Tree with 927 Illinois stores, Family Dollar with 197 stores in Illinois, Sam's Club with 25 stores in Illinois, and Schnucks with 33 locations in Illinois, with the express aim that the products would be sold in Illinois.

6.     At all times relevant and material hereto, Defendant, CARIBBEAN PRODUCE EXCHANGE, LLC, had actual knowledge that its food and food pouches, including but not limited to, Wanabana Apple Cinnamon Fruit Purée, were delivered to nationwide distributors and retailers in the USA, including but not limited to, Amazon.com, Dollar Tree, Family Dollar, Sam's Club, Schnucks, Weis and others.

7.     At all times relevant and material hereto, Defendant, CARIBBEAN PRODUCE EXCHANGE, LLC, had actual knowledge that its food and food pouches, including but not limited to, Wanabana Apple Cinnamon Fruit Purée, were delivered to retailers that had multiple

locations in Illinois, including but not limited to, Dollar Tree with 927 Illinois stores, Family Dollar with 197 stores in Illinois, Sam's Club with 25 stores in Illinois, and Schnucks with 33 locations in Illinois.

8.     Defendant, CARIBBEAN PRODUCE EXCHANGE, LLC, has purposefully directed its activities at the State of Illinois and delivered its products into the stream of commerce with the expectation that they will be purchased by consumers in the State of Illinois and purposefully availed themselves of the privilege of conducting activities within the State of Illinois, thus invoking the benefits and protections of its laws.

9.     There is no federal regulation regarding lead contamination of food and food pouches that would preempt the Plaintiffs' state-law claims.

10.     Defendant, CARIBBEAN PRODUCE EXCHANGE, LLC, forfeits any shield of federal preemption because they designed, manufactured, marketed, distributed and sold unapproved, adulterated, and/or misbranded food, including WanaBana Apple Cinnamon Fruit Purée.  Plaintiffs, JESSICA SMITH's and JOSEPH SMITH's, state law claims do not conflict with the federal regulatory scheme and do not require anything different or additional than what federal law already requires.

11.     On and prior to November 7, 2023, Defendant, CARIBBEAN PRODUCE EXCHANGE, LLC, labeled the above-described food and food pouches, including WanaBana Apple Cinnamon Fruit Purée, with the words "I AM FRUIT", "No preservatives", "Gluten free", "NO SUGAR ADDED", and "KOSHER".

12.     On and prior to November 7, 2023, Defendant, CARIBBEAN PRODUCE EXCHANGE, LLC, labeled the above-described food and food pouches, with a list of ingredients representing that the only ingredients were "Apple puree, cinnamon powder, acidulant: citric acid."

A copy of the front and back of the packaging and labeling is attached below.



13.     Since the 1990s, if not earlier, it has been well-known in the food industry that spices, including cinnamon, present a risk of lead exposure.  Spices can accumulate lead from natural sources such as soil and water; from unnatural sources such as gasoline or other pollutants; or from mixing lead with cinnamon to boost color or weight and increase the value of the product.

14.     On and prior to November 7, 2023, Defendant, CARIBBEAN PRODUCE EXCHANGE, LLC, was aware of the risk of lead in spices, including cinnamon.

15.     Lead is not generally recognized as safe but, rather, is considered unsafe for ingestion by children at any level.

16.     On and prior to November 7, 2023, the Illinois Lead Poisoning Prevention Act was enacted for the purpose of public safety and read, in relevant part,

> No person shall sell, have, offer for sale, or transfer toys, furniture, clothing, accessories, jewelry, decorative objects, edible items, candy, food, dietary supplements, or other articles used by or intended to be chewable by

children that contain a lead-bearing substance.

410 ILCS 45/4.

17.    On and prior to November 7, 2023, the Cook County, Illinois Lead Poisoning

Prevention Ordinance was enacted for the purpose of public safety and read, in relevant part,

> "No Person shall use or apply Lead-Bearing Substances:
> ***
> (c) In or upon any items, including, but not limited to, clothing, accessories,
> jewelry, decorative objects, edible items, candy, food, spices, cosmetics,
> objects used to prepare or serve food, dietary supplements, toys, furniture,
> or other articles used by or intended to be chewable or consumed by
> Children; …"

Cook County, IL, Code § 38-254

18.    On and prior to November 7, 2023, Defendant, CARIBBEAN PRODUCE

EXCHANGE, LLC, had a duty to refrain from selling food that contained lead.

19.    Defendant, CARIBBEAN PRODUCE EXCHANGE, LLC, used or allowed to be

used a manufacturing process that resulted in the food, including WanaBana Apple Cinnamon

Fruit Purée, becoming contaminated with unsafe levels of poisonous and otherwise hazardous lead.

20.    Because Defendant, CARIBBEAN PRODUCE EXCHANGE, LLC, caused or

allowed the above-described food to contain new additives of lead that are poisonous and

otherwise hazardous, they were not the same as corresponding food that did not contain lead.

21.    Because Defendant, CARIBBEAN PRODUCE EXCHANGE, LLC, caused or

allowed the above-described food to contain new additives of lead that are poisonous and

otherwise hazardous, they were entirely new food products with an additive that had never gone

through the U.S. Food and Drug Administration ("FDA") submission, review, and approval

process.

22.    Because Defendant, CARIBBEAN PRODUCE EXCHANGE, LLC, caused or

allowed the above-described food and food pouches, including WanaBana Apple Cinnamon Fruit Purée, to contain lead that is poisonous and otherwise hazardous, they were adulterated products.

23. Defendant, CARIBBEAN PRODUCE EXCHANGE, LLC, labeled the food and food pouches, including WanaBana Apple Cinnamon Fruit Purée, but said labeling did not include the presence of unsafe levels of poisonous and otherwise hazardous lead.

24. Prior to November 7, 2023, Defendant, CARIBBEAN PRODUCE EXCHANGE, LLC, sold the products, including WanaBana Apple Cinnamon Fruit Purée, in Cook County, Illinois, to Plaintiffs, JESSICA SMITH and JOSEPH SMITH, or to others who, in turn, sold them to Plaintiffs, JESSICA SMITH and JOSEPH SMITH, who fed them to their minor daughter, J.S.

25. Prior to November 7, 2023, Plaintiffs, JESSICA SMITH and JOSEPH SMITH, purchased the above-described WanaBana Apple Cinnamon Fruit Purée pouches at Dollar Tree locations at 12625 Western Avenue, Blue Island, Illinois; 8721 S. Stony Island Ave. Chicago, Illinois; 715 E. 47th Street, Chicago, Illinois and 18230 Kedzie Avenue, Hazel Crest, Illinois, and possibly other locations.

26. Prior to November 7, 2023, Plaintiffs, JESSICA SMITH and JOSEPH SMITH, read and relied upon Defendant, CARIBBEAN PRODUCE EXCHANGE, LLC's labels and ingredients and used their above-described products as intended.

27. On November 7, 2023, Plaintiff, JESSICA SMITH's and JOSEPH SMITH's minor daughter, J.S., was diagnosed with heightened and toxic lead levels in her blood after regularly consuming Defendant, CARIBBEAN PRODUCE EXCHANGE, LLC's, food for nearly one year.

28. From December 4th to December 14th, 2023, the FDA's Department of Health and Human Services conducted an inspection of AUSTROFOOD's Ecuadorian manufacturing facilities where the Wanabana products were processed and mixed, as well as AUSTROFOOD's

manufacturing procedures and documents.

29.     The FDA found that AUSTROFOOD had documentation of testing results and analyses for the Wanabana products at issue that were created prior to the year 2023.  The FDA found that this documentation showed that AUSTROFOOD had identified lead as a potential hazard in the raw materials used for the Wanabana products at issue, including cinnamon, but failed to conduct or perform preventative control for lead in the cinnamon.  The FDA also found that AUSTROFOOD failed to sample and test the cinnamon and other raw materials for heavy metals, including lead.

30.     The FDA found that these failures by AUSTROFOOD violated Current Good Manufacturing Practice (21 C.F.R. Part 117) and the Federal Food, Drug, and Cosmetic Act (21 U.S.C. § 331(uu)).

31.     From February 21st through March 7th, 2024, the Food and Drug Administration conducted an inspection of Defendant, WANABANA USA LLC's, activities to comply with FSVP regulations relating to its import of the Wanabana products at issue.

32.     The FDA found that Defendant, WANABANA USA LLC, failed to consider the required hazard analysis to identify reasonably foreseeable hazards of lead contamination when evaluating its products and when evaluating AUSTROFOOD's procedures, and failed to perform lead testing or require that the products be tested for lead.

33.     The FDA found that Defendant, WANABANA USA LLC's, safety failures violated Federal Regulations related to food safety that applied to WANABANA USA LLC.

34.     From February 27th through March 6th, 2024, the Food and Drug Administration conducted an inspection of Defendant, CARIBBEAN PRODUCE EXCHANGE LLC's, activities to comply with FSVP regulations relating to its import of the Wanabana products at issue.

83

35.     The FDA found that Defendant, CARIBBEAN PRODUCE EXCHANGE LLC, failed to consider the required hazard analysis to identify reasonably foreseeable hazards of lead contamination when evaluating its products and when evaluating AUSTROFOOD's procedures, and failed to perform lead testing or require that the products be tested for lead.

36.     The FDA found that Defendant, CARIBBEAN PRODUCE EXCHANGE, LLC's, safety failures violated Federal Regulations related to food safety that applied to CARIBBEAN PRODUCE EXCHANGE, LLC.

37.     At all times relevant, it was the duty of Defendant, CARIBBEAN PRODUCE EXCHANGE, LLC, to exercise reasonable care in the design, manufacture, and sale of the products such that they were safe for consumers in general and Plaintiff, JESSICA SMITH's and JOSEPH SMITH's minor daughter, J.S., in particular.

38.     If Defendant, CARIBBEAN PRODUCE EXCHANGE, LLC, had performed or required a reasonable review of CARIBBEAN PRODUCE EXCHANGE LLC's, WANABANA USA LLC's, and/or AUSTROFOOD's hazard evaluation processes and preventative controls prior to the products being sold or otherwise provided to Plaintiffs, the lack of testing for the known risk of lead would have been discovered and such testing should have been performed and the lead contamination would have been discovered.

39.     If Defendant, CARIBBEAN PRODUCE EXCHANGE, LLC, had performed or required reasonable testing for the presence of lead in the ingredients for the Wanabana products at issue prior to the products being sold or otherwise provided to Plaintiffs, unsafe levels of lead would have been found and the products should not have been delivered to the Plaintiffs.

40.     Prior to importing, distributing and/or selling its WanaBana Apple Cinnamon Fruit Purée pouches Defendant, CARIBBEAN PRODUCE EXCHANGE, LLC, knew or should have

known that the above-described food and food pouches manufacturing and testing processes lacked preventative control for lead, lacked reasonable and sufficient testing of the raw materials, including cinnamon, for the presence of lead, and otherwise violated policies, standards and vendor terms and conditions; Current Good Manufacturing Practice (21 C.F.R. Part 117) and the Federal Food, Drug, and Cosmetic Act (21 U.S.C. § 331(uu)).

41.     Prior to importing, distributing and/or selling its WanaBana Apple Cinnamon Fruit Purée pouches Defendant, CARIBBEAN PRODUCE EXCHANGE, LLC, knew or should have known that the above-described food and food pouches contained unsafe levels of lead.

42.     Prior to November 7, 2023, Defendant, CARIBBEAN PRODUCE EXCHANGE, LLC, did breach its duty and was guilty of one or more, or all, of the following negligent acts and/or omissions:

(a)     Designed, manufactured, and sold food and food pouches that contained lead;

(b)     Designed, manufactured, and sold food and food pouches that were adulterated;

(c)     Designed, manufactured, and sold food and food pouches that were misbranded;

(d)     Designed, manufactured, and sold food and food pouches while misrepresenting their ingredients and effects;

(e)     Designed, manufactured, and sold food and food pouches while concealing their ingredients and effects;

(f)     Designed, manufactured, and sold food and food pouches with an additive that had not undergone the FDA submission, review, and approval process;

(g)     Failed to conduct or require reasonable safety procedures related to the presence of lead;

(h)     Failed to warn about the presence of lead in their food and food pouches; and/or

(i)     Were otherwise careless and negligent in their design, manufacture, and sale of the above-described food and food pouches.

43.     As a proximate result of one or more, or all, of the foregoing negligent acts and/or omissions of Defendant, CARIBBEAN PRODUCE EXCHANGE, LLC, Plaintiff, JESSICA

SMITH's and JOSEPH SMITH's minor daughter, J.S., was caused to suffer severe personal, pecuniary, and debilitating injuries for which she has sought, and in the future must seek, medical care and attention and for which she has been kept, and will in the future be kept, from attending to her ordinary affairs and duties, and as a result of the foregoing, Plaintiff, JESSICA SMITH's and JOSEPH SMITH's minor daughter, J.S., has become, and will in the future continue to become, responsible for sums of money for medical and hospital care.

WHEREFORE, Plaintiffs, JESSICA SMITH and JOSEPH SMITH, on behalf of J.S., a minor, respectfully pray for judgment in their favor and against Defendant, CARIBBEAN PRODUCE EXCHANGE, LLC, in an amount in excess of $75,000.00 that will fairly and adequately compensate their minor daughter, J.S., together with costs of this suit, and for such other and further relief as is just and adequate.

### COUNT XXI - STRICT LIABILITY
### (Jessica Smith and Joseph Smith o/b/o J.S. v. Caribbean Produce)

1-36.    Plaintiffs, JESSICA SMITH and JOSEPH SMITH, repeat, reallege, and incorporate by reference Paragraphs 1 through 36 of Count XX of their Complaint as though fully set forth herein.

37.    The above-described food and food pouches that Defendant, CARIBBEAN PRODUCE EXCHANGE, LLC, provided to Plaintiffs, JESSICA SMITH and JOSEPH SMITH, were defective and unreasonably dangerous in one or more, or all, of the following respects:

(a)    They contained lead;

(b)    They were adulterated;

(c)    They were misbranded;

(d)    The labels misrepresented the ingredients and additives;

(e)    The labels did not include all of the ingredients and additives;

(f)    They contained poisonous substances;

(g)     They failed to include warnings about lead or other poisonous substances; and/or

(h)     They were otherwise defective and unreasonably dangerous.

38.     The above defective and unreasonably dangerous conditions existed at the time the products were manufactured.

39.     As a proximate result of one or more, or all, of the foregoing defective and unreasonably dangerous conditions in the food and food pouches designed, manufactured, and sold by Defendant, CARIBBEAN PRODUCE EXCHANGE, LLC, Plaintiff, JESSICA SMITH's and JOSEPH SMITH's minor daughter, J.S., was caused to suffer severe personal, pecuniary, and debilitating injuries for which she has sought, and in the future must seek, medical care and attention and for which she has been kept, and will in the future be kept, from attending to her ordinary affairs and duties, and as a result of the foregoing, Plaintiff, JESSICA SMITH's and JOSEPH SMITH's minor daughter, J.S., has become, and will in the future continue to become, responsible for sums of money for medical and hospital care.

WHEREFORE, Plaintiffs, JESSICA SMITH and JOSEPH SMITH, on behalf of J.S., a minor, respectfully pray for judgment in their favor and against Defendant, CARIBBEAN PRODUCE EXCHANGE, LLC, in an amount in excess of $75,000.00 that will fairly and adequately compensate their minor daughter, J.S., together with costs of this suit, and for such other and further relief as is just and adequate.

## COUNT XXII - BREACH OF IMPLIED WARRANTY
### (Jessica Smith and Joseph Smith o/b/o J.S. v. Caribbean Produce)

1-36.     Plaintiffs, JESSICA SMITH and JOSEPH SMITH, repeat, reallege, and incorporate by reference Paragraphs 1 through 36 of Count XX of their Complaint as though fully set forth herein.

37.     At all relevant times, Paragraph 2-314(2)(c) of the Illinois Uniform Commercial

Code, 810 ILCS 2-314(2)(c), was in full force and effect.

38.     At the time of the delivery of the above-described food and food pouches, Defendant, CARIBBEAN PRODUCE EXCHANGE, LLC, then and there impliedly warranted that these products were of merchantable quality and fit for the ordinary purpose for which they were used.

39.     At all relevant times, Plaintiff, JESSICA SMITH's and JOSEPH SMITH's minor daughter, J.S., was a direct or third-party beneficiary of the above-described implied warranty of merchantability.

40.     Defendant, CARIBBEAN PRODUCE EXCHANGE, LLC, breached the aforesaid implied warranty of merchantability in that the above-described food and food pouches failed to perform in the manner reasonably to be expected in light of their nature and intended function and caused injury during normal use.

41.     By reason of the aforesaid breaches of implied warranty by Defendant, CARIBBEAN PRODUCE EXCHANGE, LLC, Plaintiff, JESSICA SMITH's and JOSEPH SMITH's minor daughter, J.S., was caused to suffer severe personal, pecuniary, and debilitating injuries for which she has sought, and in the future must seek, medical care and attention and for which she has been kept, and will in the future be kept, from attending to her ordinary affairs and duties, and as a result of the foregoing, Plaintiff, JESSICA SMITH's and JOSEPH SMITH's minor daughter, J.S., has become, and will in the future continue to become, responsible for sums of money for medical and hospital care.

WHEREFORE, Plaintiffs, JESSICA SMITH and JOSEPH SMITH, on behalf of J.S., a minor, respectfully pray for judgment in their favor and against Defendant, CARIBBEAN PRODUCE EXCHANGE, LLC, in an amount in excess of $75,000.00 that will fairly and

adequately compensate their minor daughter, J.S., together with costs of this suit, and for such other and further relief as is just and adequate.

## COUNT XXIII - BREACH OF EXPRESS WARRANTY
### (Jessica Smith and Joseph Smith o/b/o J.S. v. Caribbean Produce)

1-36.    Plaintiffs, JESSICA SMITH and JOSEPH SMITH, repeat, reallege, and incorporate by reference Paragraphs 1 through 36 of Count XX of their Complaint as though fully set forth herein.

37.    At all relevant times, Paragraph 2-313(1) of the Illinois Uniform Commercial Code, 810 ILCS 2-313(1), was in full force and effect.

38.    At the time of the delivery of the above-described food pouches, Defendant, CARIBBEAN PRODUCE EXCHANGE, LLC, then and there expressly warranted that these products contained only apple puree, cinnamon powder, and citric acid.

39.    At the time of the delivery of the above-described food pouches, Defendant, CARIBBEAN PRODUCE EXCHANGE, LLC, then and there expressly warranted that these products were of merchantable quality and fit for the ordinary purpose for which they were used.

40.    At all relevant times, Plaintiff, JESSICA SMITH's and JOSEPH SMITH's minor daughter, J.S., was a direct or third-party beneficiary of the above-described express warranty of merchantability.

41.    Defendant, CARIBBEAN PRODUCE EXCHANGE, LLC, breached the aforesaid express warranty of merchantability in that the above-described food and food pouches failed to perform in the manner reasonably to be expected in light of their nature and intended function and caused injury during normal use.

42.    By reason of the aforesaid breaches of express warranty by Defendant, CARIBBEAN PRODUCE EXCHANGE, LLC, Plaintiff, JESSICA SMITH's and JOSEPH

SMITH's minor daughter, J.S., was caused to suffer severe personal, pecuniary, and debilitating injuries for which she has sought, and in the future must seek, medical care and attention and for which she has been kept, and will in the future be kept, from attending to her ordinary affairs and duties, and as a result of the foregoing, Plaintiff, JESSICA SMITH's and JOSEPH SMITH's minor daughter, J.S., has become, and will in the future continue to become, responsible for sums of money for medical and hospital care.

WHEREFORE, Plaintiffs, JESSICA SMITH and JOSEPH SMITH, on behalf of J.S., a minor, respectfully pray for judgment in their favor and against Defendant, CARIBBEAN PRODUCE EXCHANGE, LLC, n an amount in excess of $75,000.00 that will fairly and adequately compensate their minor daughter, J.S., together with costs of this suit, and for such other and further relief as is just and adequate.

## COUNT XXIV - FAMILY EXPENSE ACT
### (Jessica Smith and Joseph Smith v. Caribbean Produce)

1. Plaintiffs, JESSICA SMITH and JOSEPH SMITH, on behalf of J.S., a minor, repeat, reallege, and incorporate by reference the allegations of Counts XX through XXIII of their Complaint, together and in the alternative, as though fully set forth herein.

2. At the time she tested positive for heightened lead levels, J.S. was a minor and Plaintiffs, JESSICA SMITH and JOSEPH SMITH, were the parents of J.S.

3. As a proximate result of one or more, or all, of the foregoing acts and/or omissions of Defendant, CARIBBEAN PRODUCE EXCHANGE, LLC, Plaintiff, JESSICA SMITH's and JOSEPH SMITH's minor daughter, J.S., sustained injuries and damages of a personal and pecuniary nature, necessitating medical treatment, and resulting in medical expenses for her medical treatment.

4. Plaintiffs, JESSICA SMITH and JOSEPH SMITH, as parents of J.S., incurred

medical expenses for the treatment provided to J.S. when she was a minor.

5.      This action is brought pursuant to the Family Expense Act, 750 ILCS 65/15.

WHEREFORE, Plaintiffs, JESSICA SMITH and JOSEPH SMITH, respectfully pray for judgment against Defendant, CARIBBEAN PRODUCE EXCHANGE, LLC, in such sum as will reasonably and fairly compensate Plaintiffs, JESSICA SMITH and JOSEPH SMITH, for the medical expenses they incurred for treatment of their daughter, J.S., a minor, resulting from the acts and/or omissions of Defendant, CARIBBEAN PRODUCE EXCHANGE, LLC, together with costs of this suit, and for such other and further relief as is just and adequate.

### COUNT XXV - NEGLIGENCE
### (Jessica Smith and Joseph Smith o/b/o J.S. v. Negasmart)

1.      On and prior to November 7, 2023, Defendant, S&S NEGOCIOS ASOCIADOS MAYORISTAS NEGASMART S.A., was a company doing business in the State of Illinois.

2.      On and prior to November 7, 2023, Defendant, S&S NEGOCIOS ASOCIADOS MAYORISTAS NEGASMART S.A., was doing business in the processing, manufacture, distribution and/or sale of ground cinnamon.

3.      Prior to November 7, 2023, Defendant, S&S NEGOCIOS ASOCIADOS MAYORISTAS NEGASMART S.A. contracted with Defendants, AUSTROFOOD S.A.S and/or AUSTROFOOD CIA. LTDA. to supply ground cinnamon intended for human consumption.

4.      Prior to November 7, 2023, Defendant, S&S NEGOCIOS ASOCIADOS MAYORISTAS NEGASMART S.A. sold ground cinnamon intended for human consumption to Defendants, AUSTROFOOD S.A.S and/or AUSTROFOOD CIA. LTDA.

5.      At all times relevant and material hereto, Defendant, S&S NEGOCIOS ASOCIADOS MAYORISTAS NEGASMART S.A. knew that the cinnamon it sold to Defendants, AUSTROFOOD S.A.S and/or AUSTROFOOD CIA. LTDA., was intended for use in food

products to be imported to the United States and the State of Illinois.

6.     At all times relevant and material hereto, Defendant, S&S NEGOCIOS ASOCIADOS MAYORISTAS NEGASMART S.A., controlled and/or had the authority to control the sourcing of cinnamon, ingredients, testing, manufacturing process, quality assurance protocols, design, packaging, labeling, marketing, advertising, promotion, distribution, and sales of its products.  Defendant therefore had control over both the contents and the labeling of its products.

7.     At all times relevant and material hereto, Defendant, S&S NEGOCIOS ASOCIADOS MAYORISTAS NEGASMART S.A., represented, warranted, certified and guaranteed that the ground cinnamon it sold to Defendants, AUSTROFOOD S.A.S and/or AUSTROFOOD CIA. LTDA., that the cinnamon it sold was safe for human consumption and that the cinnamon met various quality control standards, including that it did not contain heavy metals, including lead, at levels above recognized safety standards.

8.     Defendant, S&S NEGOCIOS ASOCIADOS MAYORISTAS NEGASMART S.A., used a manufacturing process that resulted in the ground cinnamon becoming contaminated with unsafe levels of poisonous and otherwise hazardous lead.

9.     Lead is not generally recognized as safe but, rather, is considered unsafe for ingestion by children at any level.

10.     Defendants, AUSTROFOOD S.A.S and/or AUSTROFOOD CIA. LTDA., in concert with other Defendants, as set forth above, used the ground cinnamon purchased from Defendant, S&S NEGOCIOS ASOCIADOS MAYORISTAS NEGASMART S.A., as an ingredient in WanaBana Apple Cinnamon Fruit Purée.

11.     Defendant, S&S NEGOCIOS ASOCIADOS MAYORISTAS NEGASMART S.A., has purposefully directed its activities at the State of Illinois and delivered its products into the

stream of commerce with the expectation that they will be purchased by consumers in the State of Illinois and purposefully availed themselves of the privilege of conducting activities within the State of Illinois, thus invoking the benefits and protections of its laws.

12. There is no federal regulation regarding lead contamination of food and food pouches that would preempt the Plaintiffs' state-law claims.

13. Defendant, S&S NEGOCIOS ASOCIADOS MAYORISTAS NEGASMART S.A., forfeits any shield of federal preemption because it designed, manufactured, marketed, distributed and sold unapproved, adulterated, and/or misbranded food, including ground cinnamon. Plaintiffs, JESSICA SMITH's and JOSEPH SMITH's, state law claims do not conflict with the federal regulatory scheme and do not require anything different or additional than what federal law already requires.

14. Because Defendant, S&S NEGOCIOS ASOCIADOS MAYORISTAS NEGASMART S.A., caused or allowed the above-described cinnamon to contain new additives of lead that are poisonous and otherwise hazardous, they were not the same as corresponding food that did not contain lead.

15. Because Defendant, S&S NEGOCIOS ASOCIADOS MAYORISTAS NEGASMART S.A., caused or allowed the above-described cinnamon to contain new additives of lead that are poisonous and otherwise hazardous, they were entirely new food products with an additive that had never gone through the U.S. Food and Drug Administration ("FDA") submission, review, and approval process.

16. Because Defendant, S&S NEGOCIOS ASOCIADOS MAYORISTAS NEGASMART S.A., caused or allowed the above-described cinnamon to contain lead that is poisonous and otherwise hazardous, they were adulterated products.

17.     Defendant, S&S NEGOCIOS ASOCIADOS MAYORISTAS NEGASMART S.A., labeled the cinnamon, but said labeling did not include the presence of unsafe levels of poisonous and otherwise hazardous lead.

18.     Prior to November 7, 2023, JESSICA SMITH and JOSEPH SMITH, who fed them to their minor daughter, J.S. purchased WanaBana Apple Cinnamon Fruit Purée that contained Defendant, S&S NEGOCIOS ASOCIADOS MAYORISTAS NEGASMART S.A.'s, lead-tainted cinnamon.

19.     Prior to November 7, 2023, JESSICA SMITH and JOSEPH SMITH, who fed the WanaBana Apple Cinnamon Fruit Purée that contained Defendant, S&S NEGOCIOS ASOCIADOS MAYORISTAS NEGASMART S.A.'s, lead-tainted cinnamon to their minor daughter, J.S.

20.     On November 7, 2023, Plaintiff, JESSICA SMITH's and JOSEPH SMITH's minor daughter, J.S., was diagnosed with heightened and toxic lead levels in her blood after regularly consuming WanaBana Apple Cinnamon Fruit Purée that contained Defendant, S&S NEGOCIOS ASOCIADOS MAYORISTAS NEGASMART S.A.'s, lead-tainted cinnamon for nearly one year.

21.     At all times relevant, it was the duty of Defendant, S&S NEGOCIOS ASOCIADOS MAYORISTAS NEGASMART S.A., to exercise reasonable care in the design, processing, manufacture, labeling and sale of the products such that they were safe for consumers in general and Plaintiff, JESSICA SMITH's and JOSEPH SMITH's minor daughter, J.S., in particular.

22.     Prior to November 7, 2023, Defendant, S&S NEGOCIOS ASOCIADOS MAYORISTAS NEGASMART S.A., did breach its duty and was guilty of one or more, or all, of the following negligent acts and/or omissions:

(a)     Designed, manufactured, and sold cinnamon that contained lead;

(b)     Designed, manufactured, and sold cinnamon that was adulterated;

94

(c)     Designed, manufactured, and sold cinnamon that was misbranded;

(d)     Designed, manufactured, and sold cinnamon while misrepresenting their ingredients and effects;

(e)     Designed, manufactured, and sold cinnamon while concealing its ingredients and effects;

(f)     Designed, manufactured, and sold cinnamon with an additive that had not undergone the FDA submission, review, and approval process;

(g)     Failed to warn about the presence of lead in its cinnamon; and/or

(h)     Was otherwise careless and negligent in the design, manufacture and sale of the above-described food and food pouches.

23.     As a proximate result of one or more, or all, of the foregoing negligent acts and/or omissions of Defendant, S&S NEGOCIOS ASOCIADOS MAYORISTAS NEGASMART S.A., Plaintiff, JESSICA SMITH's and JOSEPH SMITH's minor daughter, J.S., was caused to suffer severe personal, pecuniary, and debilitating injuries for which she has sought, and in the future must seek, medical care and attention and for which she has been kept, and will in the future be kept, from attending to her ordinary affairs and duties, and as a result of the foregoing, Plaintiff, JESSICA SMITH's and JOSEPH SMITH's minor daughter, J.S., has become, and will in the future continue to become, responsible for sums of money for medical and hospital care.

WHEREFORE, Plaintiffs, JESSICA SMITH and JOSEPH SMITH, on behalf of J.S., a minor, respectfully pray for judgment in their favor and against Defendant, S&S NEGOCIOS ASOCIADOS MAYORISTAS NEGASMART S.A., in an amount in excess of $75,000.00 that will fairly and adequately compensate their minor daughter, J.S., together with costs of this suit, and for such other and further relief as is just and adequate.

### COUNT XXVI - STRICT LIABILITY
### (Jessica Smith and Joseph Smith o/b/o J.S. v. Negasmart)

1-20.   Plaintiffs, JESSICA SMITH and JOSEPH SMITH, repeat, reallege, and incorporate by reference Paragraphs 1 through 20 of Count XXV of their Complaint as though

fully set forth herein.

21.     Defendant, S&S NEGOCIOS ASOCIADOS MAYORISTAS NEGASMART S.A.'s, above-described cinnamon was defective and unreasonably dangerous in one or more, or all, of the following respects:

    (a)    It contained lead;

    (b)    It was adulterated;

    (c)    It was misbranded;

    (d)    The labels misrepresented the ingredients and additives;

    (e)    The labels did not include all of the ingredients and additives;

    (f)    It contained poisonous substances;

    (g)    It failed to include warnings about lead or other poisonous substances; and/or

    (h)    It was otherwise defective and unreasonably dangerous.

22.     As a proximate result of one or more, or all, of the foregoing defective and unreasonably dangerous conditions in the food and food pouches designed, manufactured, and sold by Defendant, S&S NEGOCIOS ASOCIADOS MAYORISTAS NEGASMART S.A., Plaintiff, JESSICA SMITH's and JOSEPH SMITH's minor daughter, J.S., was caused to suffer severe personal, pecuniary, and debilitating injuries for which she has sought, and in the future must seek, medical care and attention and for which she has been kept, and will in the future be kept, from attending to her ordinary affairs and duties, and as a result of the foregoing, Plaintiff, JESSICA SMITH's and JOSEPH SMITH's minor daughter, J.S., has become, and will in the future continue to become, responsible for sums of money for medical and hospital care.

WHEREFORE, Plaintiffs, JESSICA SMITH and JOSEPH SMITH, on behalf of J.S., a minor, respectfully pray for judgment in their favor and against Defendant, S&S NEGOCIOS ASOCIADOS MAYORISTAS NEGASMART S.A., in an amount in excess of $75,000.00 that will fairly and adequately compensate their minor daughter, J.S., together with costs of this suit,

and for such other and further relief as is just and adequate.

## COUNT XXVII - BREACH OF IMPLIED WARRANTY
### (Jessica Smith and Joseph Smith o/b/o J.S. v. Negasmart)

1-20.    Plaintiffs, JESSICA SMITH and JOSEPH SMITH, repeat, reallege, and incorporate by reference Paragraphs 1 through 20 of Count XXV of their Complaint at Law as though fully set forth herein.

21.    At all relevant times, Paragraph 2-314(2)(c) of the Illinois Uniform Commercial Code, 810 ILCS 2-314(2)(c), was in full force and effect.

22.    At the time of the delivery of the above-described cinnamon, Defendant, S&S NEGOCIOS ASOCIADOS MAYORISTAS NEGASMART S.A., then and there impliedly warranted that it was of merchantable quality and fit for the ordinary purpose for which they were used.

23.    At all relevant times, Plaintiff, JESSICA SMITH's and JOSEPH SMITH's minor daughter, J.S., was a direct or third-party beneficiary of the above-described implied warranty of merchantability.

24.    Defendant, S&S NEGOCIOS ASOCIADOS MAYORISTAS NEGASMART S.A., breached the aforesaid implied warranty of merchantability in that the above-described cinnamon failed to perform in the manner reasonably to be expected in light of its nature and intended function and caused injury during normal use.

25.    By reason of the aforesaid breaches of implied warranty by Defendant, S&S NEGOCIOS ASOCIADOS MAYORISTAS NEGASMART S.A., Plaintiff, JESSICA SMITH's and JOSEPH SMITH's minor daughter, J.S., was caused to suffer severe personal, pecuniary, and debilitating injuries for which she has sought, and in the future must seek, medical care and attention and for which she has been kept, and will in the future be kept, from attending to her

97

ordinary affairs and duties, and as a result of the foregoing, Plaintiff, JESSICA SMITH's and JOSEPH SMITH's minor daughter, J.S., has become, and will in the future continue to become, responsible for sums of money for medical and hospital care.

WHEREFORE, Plaintiffs, JESSICA SMITH and JOSEPH SMITH, on behalf of J.S., a minor, respectfully pray for judgment in their favor and against Defendant, S&S NEGOCIOS ASOCIADOS MAYORISTAS NEGASMART S.A., in an amount in excess of $75,000.00 that will fairly and adequately compensate their minor daughter, J.S., together with costs of this suit, and for such other and further relief as is just and adequate.

### COUNT XXVIII - BREACH OF EXPRESS WARRANTY
### (Jessica Smith and Joseph Smith o/b/o J.S. v. Negasmart)

1-20.    Plaintiffs, JESSICA SMITH and JOSEPH SMITH, repeat, reallege, and incorporate by reference Paragraphs 1 through 20 of Count XXV of their Complaint at Law as though fully set forth herein.

21.    At all relevant times, Paragraph 2-313(1) of the Illinois Uniform Commercial Code, 810 ILCS 2-313(1), was in full force and effect.

22.    At the time of the delivery of the above-described cinnamon, Defendant, S&S NEGOCIOS ASOCIADOS MAYORISTAS NEGASMART S.A., then and there expressly warranted that it was safe for human consumption and that the cinnamon met various quality control standards, including that it did not contain heavy metals, including lead, at levels above recognized safety standards.

23.    At the time of the delivery of the above-described food pouches, Defendant, S&S NEGOCIOS ASOCIADOS MAYORISTAS NEGASMART S.A., then and there expressly warranted that these products were of merchantable quality and fit for the ordinary purpose for which they were used.

24. At all relevant times, Plaintiff, JESSICA SMITH's and JOSEPH SMITH's minor daughter, J.S., was a direct or third-party beneficiary of the above-described express warranty of merchantability.

25. Defendant, S&S NEGOCIOS ASOCIADOS MAYORISTAS NEGASMART S.A., breached the aforesaid express warranty of merchantability in that the above-described cinnamon failed to perform in the manner reasonably to be expected in light of their nature and intended function and caused injury during normal use.

26. By reason of the aforesaid breaches of express warranty by Defendant, S&S NEGOCIOS ASOCIADOS MAYORISTAS NEGASMART S.A., Plaintiff, JESSICA SMITH's and JOSEPH SMITH's minor daughter, J.S., was caused to suffer severe personal, pecuniary, and debilitating injuries for which she has sought, and in the future must seek, medical care and attention and for which she has been kept, and will in the future be kept, from attending to her ordinary affairs and duties, and as a result of the foregoing, Plaintiff, JESSICA SMITH's and JOSEPH SMITH's minor daughter, J.S., has become, and will in the future continue to become, responsible for sums of money for medical and hospital care.

WHEREFORE, Plaintiffs, JESSICA SMITH and JOSEPH SMITH, on behalf of J.S., a minor, respectfully pray for judgment in their favor and against Defendant, S&S NEGOCIOS ASOCIADOS MAYORISTAS NEGASMART S.A., in an amount in excess of $75,000.00 that will fairly and adequately compensate their minor daughter, J.S., together with costs of this suit, and for such other and further relief as is just and adequate.

## COUNT XXIX - FAMILY EXPENSE ACT
### (Jessica Smith and Joseph Smith v. Negasmart)

1. Plaintiffs, JESSICA SMITH and JOSEPH SMITH, repeat, reallege, and incorporate by reference the allegations of Counts XXV through XXVIII of their Complaint,

together and in the alternative, as though fully set forth herein.

2. At the time she tested positive for heightened lead levels, J.S. was a minor and Plaintiffs, JESSICA SMITH and JOSEPH SMITH, were the parents of J.S.

3. As a proximate result of one or more, or all, of the foregoing acts and/or omissions of Defendant, S&S NEGOCIOS ASOCIADOS MAYORISTAS NEGASMART S.A., Plaintiff, JESSICA SMITH's and JOSEPH SMITH's minor daughter, J.S., sustained injuries and damages of a personal and pecuniary nature, necessitating medical treatment, and resulting in medical expenses for her medical treatment.

4. Plaintiffs, JESSICA SMITH and JOSEPH SMITH, as parents of J.S., incurred medical expenses for the treatment provided to J.S. when she was a minor.

5. This action is brought pursuant to the Family Expense Act, 750 ILCS 65/15.

WHEREFORE, Plaintiffs, JESSICA SMITH and JOSEPH SMITH, respectfully pray for judgment against Defendant, S&S NEGOCIOS ASOCIADOS MAYORISTAS NEGASMART S.A., in such sum as will reasonably and fairly compensate Plaintiffs, JESSICA SMITH and JOSEPH SMITH, for the medical expenses they incurred for treatment of their daughter, J.S., a minor, resulting from the acts and/or omissions of Defendant, S&S NEGOCIOS ASOCIADOS MAYORISTAS NEGASMART S.A., together with costs of this suit, and for such other and further relief as is just and adequate.

Respectfully submitted,

**WALSH, KNIPPEN & CETINA, CHARTERED**

By: /s/ *Charles L. Cannon*

Charles L. Cannon

Charles L. Cannon
Daniel K. Cetina
WALSH, KNIPPEN & CETINA, CHARTERED
2150 Manchester Road, Suite 200
Wheaton, Illinois 60187
(630) 462-1980
chuck@wkc-lawyers.com
dan@wkc-lawyers.com
pleadings@wkc-lawyers.com