**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JESSICA SMITH and JOSEPH SMITH, on Behalf of JAEL SMITH, a minor, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| WANABANA, LLC, WANABANA USA LLC, WANABANA EXCHANGE, LLC, DOLLAR TREE, INC., DOLLAR TREE STORES, INC., AUSTROFOOD S.A.S., AUSTROFOOD CIA. LTDA., GRUPO NAVIS LLC a/k/a NAVIS LLC, CARIBBEAN PRODUCE EXCHANGE, LLC, and S&S NEGOCOIS ASOCIADOS MAYORISTAS NEGASMART S.A., | ) ) ) ) ) ) ) ) ) ) ) | Case No. 24-cv-02196<br><br>Judge Sharon Johnson Coleman |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs, Jessica Smith and Joseph Smith, on behalf of Jael Smith, a minor ("Plaintiffs") brought this case alleging that Grupo Navis LLC ("Navis") controlled the design, manufacture, and sale of WanaBana Apple Cinnamon Fruit Purée pouches (the "Fruit Pouch"), which contained unsafe levels of poisonous or otherwise hazardous lead. Plaintiffs claim that their daughter suffered bodily harm as a result of consuming the contaminated Fruit Pouch regularly for nearly one year.

Before the Court is Navis's motion to dismiss all claims asserted against it under Federal Rule of Civil Procedure ("FRCP") 12b(6) and 735 ILCS 5/2-621. For the reasons set forth below, Navis's motion to dismiss is denied in part and granted in part [115].

1

**BACKGROUND**

The following facts are drawn from Plaintiffs' third amended complaint (the "Complaint") and are accepted as true for the purpose of resolving the instant motions to dismiss.

Navis is an LLC that does business in Illinois and is registered with the Illinois Secretary of State. Navis was in the business of designing, manufacturing and selling food and food products. Caribbean Produce Exchange ("CPE"), a Puerto Rico corporation, was wholly-owned by Navis, its parent company. CPE was registered with the Food and Drug Administration Foreign Supplier Verification Program ("FSVP") as a supplier and importer of Wanabana food products. Under FSVP regulations, CPE was required to identify, assess, and document known or reasonably foreseeable hazards in Wanabana products, and require controls to prevent them.

Sometime prior to 2018, agents of Navis and CPE met Defendants Austrofood S.A.S. and Austrofood CIA. LTDA (together, "Austrofood") at a trade show. Navis and CPE "recruited" Austrofood to create "a series of sham companies"—including Wanabana, LLC, Wanabana Exchange, LLC, and Wanabana USA, LLC (together, "Wanabana")—to participate in designing, manufacturing and selling food products.

The Fruit Pouch was manufactured at Austrofood's facilities in Ecuador. Plaintiffs allege that Wanabana purchased the Fruit Pouch while they were *en route* from Ecuador and sold them to retailers in the United States. Plaintiffs allege that Navis oversaw the management of Wanabana's operations and enjoyed the profits generated by the sale of the Fruit Pouch.

Plaintiffs purchased the Fruit Pouch at retail locations in Illinois and fed them to their minor child for nearly a year. On November 7, 2023, Plaintiffs' child was diagnosed with heightened levels of lead in her blood. The diagnosis was a result of regularly consuming the Fruit Pouch, which

contained unsafe levels of poisonous and otherwise hazardous lead. Plaintiffs allege that Navis was aware of the risk of lead in spices such as cinnamon, a main ingredient in the Fruit Pouch.

Plaintiffs claim that Navis had the authority to control, test, and inspect the manufacturing facilities and the Fruit Pouches they produced. Navis knew or should have known that the Fruit Pouch contained lead, was an adulterated product, and that the Fruit Pouch's labeling did not include the presence of lead.

## LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint, not its merits. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). To survive a motion to dismiss, a plaintiff must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A complaint is facially plausible when the plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009). When considering dismissal of a complaint pursuant to Rule 12(b)(6), the Court accepts well-pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012); *Trujillo v. Rockledge Furniture LLC*, 926 F.3d 395, 397 (7th Cir. 2019).

## DISCUSSION

Navis moves to dismiss five counts of Plaintiffs' complaint for failure to state a claim: negligence (Count XV), strict liability (Count XVI), breach of implied warranty (Count XVII), breach of express warranty (Count XVIII), and claims under the Family Expense Act, 750 ILCS 65/15 (Count XIX).

## I.      Count XVI: Strict Liability

Plaintiffs allege that Navis is strictly liable for designing, manufacturing, and selling the defective and unreasonably dangerous Fruit Pouch.  Navis argues that because it was not the manufacturer of the Fruit Pouch, it is immune from Plaintiffs' strict liability claims under the Illinois Seller's Exception, 735 ILCS 5/2-621.  The Illinois Seller's Exception requires dismissal of a nonmanufacturing defendant from a strict liability action if such defendant identifies the manufacturer of an allegedly defective product.  *Brobbey v. Enter. Leasing Co. of Chi.*, 404 Ill. App. 3d 420, 428, 935 N.E.2d 1084, 1092 (1st Dist. 2010).  The exception is intended to allow nonmanufacturing defendants to defer liability upstream to the manufacturers of defective products.  *See Brobbey*, 404 Ill. App. 3d at 428; *see also Cherry v. Siemans Medical Systems, Inc.*, 206 Ill. App. 3d 1055, 1060–61, 565 N.E.2d 215, 218 (1st Dist. 1990).

The parties have already identified the manufacturer of the Fruit Pouch.  In Defendant Dollar Tree's motion to dismiss, Dollar Tree filed an affidavit identifying Wanabana as the manufacturer of the Fruit Pouch.  Wanabana then filed a third-party complaint identifying Austrofood as the correct manufacturer, and Plaintiffs filed a First Amended Complaint asserting claims against Austrofood as the manufacturer of the Fruit Pouch.  Here again, Navis filed an affidavit identifying the manufacturer of the Fruit Pouch as Austrofood in compliance with the Illinois Seller's Exception requirements.  *See* 735 ILCS 5/2-621(b).  Because Navis is immune, the Court dismisses Count XVI.

## II.      Count XV: Negligence

Plaintiffs claim that Navis was negligent in breaching its duty to exercise reasonable care in the sale of its products such that they were safe for consumers, proximately causing Plaintiffs' child's injuries.  In Illinois, product liability cases asserting negligence fall under the standard of common law negligence. *Calles v. Scripto–Tokai Corp.*, 224 Ill.2d 247, 309 Ill.Dec. 383, 864 N.E.2d 249, 263

4

(2007). It is insufficient to only allege that a product is defective or unsafe. *Calles*, 224 Ill.2d at 270. To support a negligence claim, plaintiffs must allege that a defendant was at fault and thus liable for their injuries. *Id.* at 270. A plaintiff must also show that defendant "knew or should have known of the risk posed by the product." *Jones v. UPR Fruit Pouch, Inc.,* No. 14-cv-1248, 2015 WL 3463367, at *5 (N.D. Ill. May 29, 2015) (Alonso, J).

According to Navis, the Fruit Pouch was already contaminated with lead when it left the manufacturer. Navis therefore argues that because "the products were already contaminated through no fault of [theirs]," Plaintiffs failed to state a negligence claim against them. This argument is unavailing. While Plaintiffs must allege Navis was at fault for their child's injuries, they are not required to allege that Navis itself caused the Fruit Pouch to be contaminated. Plaintiffs allege that Navis "knew or should have known of the risk posed" by the Fruit Pouch. Its alleged negligent act was failing to "perform[] or require[] reasonable testing for the presence of lead in the ingredients for the Wanabana products at issue prior to the products being sold or otherwise provided to Plaintiffs." If Navis had performed (or required Austrofood or Wanabana to perform) such testing before the Fruit Pouch was distributed, "unsafe levels of lead would have been found and the products should not have been delivered to the Plaintiffs." Navis's alleged failure to test the Fruit Pouch despite knowing of the risk of lead was part of the chain of causation leading to Plaintiffs' injuries. Plaintiffs' negligence allegations are sufficient to survive a motion to dismiss.

For these reasons, the Court denies Navis's motion to dismiss Count XV.

### III.   Counts XVII and XVIII: Breach of Warranties

Plaintiffs bring two claims of breach of warranty against Navis: breach of implied warranty and breach of express warranty.

a. *Breach of Implied Warranty*

Plaintiffs claim that Navis impliedly warranted that the Fruit Pouch was of merchantable quality and fit for the ordinary purpose for which it was used: "to be eaten or ingested, including by children." Under Illinois law, to state a claim for a breach of an implied warranty of merchantability Plaintiffs must allege that (1) Navis "sold goods that were not merchantable at the time of sale," (2) Plaintiffs "suffered damages as a result of the defective goods," and (3) Plaintiffs gave Navis notice of the defect. *See Corwin v. Connecticut Valley Arms, Inc.*, 74 F. Supp. 3d 883, 891 (N.D. Ill. 2014) (Pallmeyer, J.) (citing *Indus. Hard Chrome, Ltd.,* 64 F. Supp. 2d at 748 (citing 810 ILCS 5/2–314)). Direct notice is not required when "(1) the seller has actual knowledge of the defect of the particular product; or (2) a consumer plaintiff suffers a personal injury." *In re McDonald's French Fries Litig.,* 503 F.Supp.2d 953, 956 (N.D. Ill. 2007) (Bucklo, J.). Because Plaintiffs allege personal injuries as a result of their child consuming the Fruit Pouch, the Complaint sufficiently pleads an exception to the notice requirement. Likewise, by suing for personal injury, Plaintiffs are excepted from the privity of contract requirement in a breach of implied warranty claim. *See Perona v. Volkswagen of America, Inc.,* 292 Ill.App.3d 59, 64, 225 Ill.Dec. 868, 684 N.E.2d 859 (1997).

Navis argues that in cases claiming breach of implied warranty for sealed products sold by nonmanufacturing parties, Illinois law "supports" transferring such liability to the manufacturer, citing *Warren v. Coca-Cola Bottling Co. of Chicago*, 166 Ill. App. 3d 566, 572, 519 N.E.2d 1197, 1201 (1988). But the court held in *Warren* that a customer may pursue a claim for breach of implied warranty against a manufacturer, rather than only the immediate seller. The law does not entitle a nonmanufacturer to transfer liability to the manufacturer in a breach of implied warranty claim, as it could in a strict products liability claim where the Illinois Seller's Exception applies. The Illinois Commercial Code provides that "a warranty that the goods shall be merchantable is implied in a

6

contract for their sale if the seller is a merchant with respect to goods of that kind" unless the seller modifies or excludes the warranty. 810 Ill. Comp. Stat. Ann. 5/2-314.

Liberally construing the allegations in the Complaint, Navis was part of a network of companies that were in the business of selling food and food products. Plaintiffs allege that Navis, through the Wanabana entities, bought the Fruit Pouch from Austrofood and sold it to retailers in the United States to be eventually purchased by Plaintiffs. The fact that Navis is not the original manufacturer nor the immediate seller to Plaintiffs is not dispositive of Plaintiffs' claim. *See Bay Valley Foods, LLC v. FFI Grp., LLC*, No. 23-cv-14524, 2025 WL 2257356, at *12 (N.D. Ill. Aug. 7, 2025), *reconsideration denied*, No. 23-cv-14524, 2025 WL 3089109 (N.D. Ill. Nov. 5, 2025) (Kennelly, J.) (finding breach of implied warranty by intermediary distributor where products contained metal when they left control of manufacturer, "and accordingly when they passed down the supply chain"). Navis has not modified or disclaimed the implied warranty, which runs with the product at issue. Accordingly, the Court denies Navis's motion to dismiss Count XVII.

> *b. Breach of Express Warranty*

Next, Plaintiffs claim Navis expressly warranted that the Fruit Pouch was of merchantable quality and fit for its ordinary purpose because Navis "labeled" the Fruit Pouches packaging with a list of ingredients which failed to include "the presence of unsafe levels of poisonous and otherwise hazardous lead." Plaintiffs do not link the particular statements to any individual Defendant. Instead, Plaintiffs allege identical conduct by Wanabana, Austrofood, and S&S Negocios Asociados Mayoristas Negasmart S.A ("Negasmart"), the supplier of ground cinnamon used to manufacture the Fruit Pouch.

A similar case in this district, *Ibarolla v. Nutrex Research, Inc.*, No. 12-cv-4848, 2012 WL 5381236 (N.D. Ill. Oct. 31, 2012) (Aspen, J.), is persuasive. In *Ibarolla*, the plaintiff alleged that both the manufacturer and a seller of certain nutritional supplements made promises and representations

7

about the effectiveness of the supplements. The plaintiff did not link specific statements to a specific defendant. *Id.* at \*7. The court concluded that the plaintiff had impermissibly treated different defendants as "identical" when "there [was] no basis for presuming that they made identical representations to [p]laintiff." *Id.* Plaintiffs cannot treat Wanabana, Austrofood, Negasmart, and Navis as one, but must identify specific representations made by Navis to state an express warranty claim. They "must identify what representations were made by [Navis]" to determine whether they amount to express warranties. *Id.* Because they failed to do so, the Court dismisses Count XVIII.

### IV.    Count XIX: Family Expense Act

Plaintiffs claim to bring the entire action pursuant to the Family Expense Act due to the proximate result of one or more, or all, of the negligent acts or omissions of Navis. Navis argues that the Family Expense Act is not a standalone cause of action and that, since all underlying claims fail, this one must as well.

The Family Expense Act gives parents a cause of action against a tortfeasor who, by injuring their child, causes them to incur medical expenses. *Bauer v. Memorial Hospital*, 377 Ill. App. 3d 895, 992, 879 N.E.2d 478, 502, (5th Dist. 2007). The Illinois Supreme Court recognized that this cause of action belongs to the parents, and "if the parents are not entitled to recover, neither is the child." *Bauer*, 879 N.E.2d at 502. Plaintiffs have adequately plead that their child sustained injuries and that they incurred medical expenses for her treatment. And as explained above, Plaintiffs have stated a claim for negligence and breach of implied warranty of merchantability. Because these claims survive, Plaintiffs' Family Expense Act claim is not a standalone action and may go forward. Accordingly, the Court denies Navis's motion to dismiss Count XIX.

**CONCLUSION**

For the reasons stated herein, the Court denies Navis's motion to dismiss as to Counts XV, XVII, and XIX. The Court grants Navis's motion to dismiss as to Count XVI with prejudice, as amendment would be futile, and as to Count XVIII without prejudice [115].

**IT IS SO ORDERED.**

Date: 2/6/2026

Entered: _____

SHARON JOHNSON COLEMAN
United States District Judge